IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
Nashville Division

| | |
|---|---|
| L.W., by and through her parents and next friends, Samantha Williams and Brian Williams, et al., <br><br> *Plaintiffs* <br><br> v. <br><br> JONATHAN SKRMETTI, in his official capacity as the Tennessee Attorney General and Reporter, et al., <br><br> *Defendants* | **Civil No. 3:23-cv-00376** <br> **Judge Richardson** <br><br> **Judge Newbern** |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO RESET BRIEFING SCHEDULE AND CONSOLIDATE PRELIMINARY INJUNCTION HEARING WITH TRIAL ON THE MERITS**

Plaintiffs L.W., by and through her parents and next friends, Samantha Williams and Brian Williams; SAMANTHA WILLIAMS; BRIAN WILLIAMS; JOHN DOE, by and through his parents and next friends, Jane Doe and James Doe; JANE DOE; JAMES DOE; RYAN ROE, by and through his parent and next friend, Rebecca Roe; REBECCA ROE; and SUSAN N. LACY, on behalf of herself and her patients, by and through counsel, respond in opposition to Defendants' Motion to Reset Briefing Schedule and Consolidate Preliminary Injunction Hearing with Trial on the Merits, and respectfully request that the Court DENY Defendants' motion to reset the briefing schedule related to Plaintiffs' Motion for Preliminary Injunction and DENY Defendants' motion to consolidate the preliminary injunction hearing with the trial on the merits, and for good cause, show as follows:

## INTRODUCTION[1]

In their extraordinary filing, Defendants complain that "Plaintiffs are attempting to rush this Court into a premature decision on their preliminary injunction motion." ECF No. 74 at 2. But it is Defendants that seek to short-circuit the Court's judgment by unilaterally declaring that the Health Care Ban should take effect without any judicial consideration of its constitutionality. Defendants assert that no one will suffer irreparable harm before April 1, 2024, because the Health Care Ban allows current patients to continue treatment through March 31, 2024. But, as explained in Plaintiffs' motion, to continue receiving care in Tennessee, the Minor Plaintiffs would immediately have to start titrating down their medication to avoid a sudden termination of medical treatment. And the Provider Plaintiff would immediately be prohibited from initiating gender affirming hormone therapy for new patients. Moreover, the United States—which has authority

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Complaint (ECF No. 1).

1

to seek facial relief on behalf of all Tennesseans affected by the Health Care Ban—will immediately suffer irreparable harm as the Health Care Ban prevents transgender youth and their parents from accessing care.

If Defendants believe that these harms are not sufficiently irreparable, the proper forum for making those arguments is in a brief opposing the preliminary injunction. Instead, Defendants essentially ask the Court to predetermine that no irreparable harm exists and constructively deny Plaintiffs' motion before it is even fully briefed. This Court should not entertain Defendants' gamesmanship.

## ARGUMENT

### I. Defendants' Motion For Consolidation Is Procedurally Improper And Meritless.

Defendants are entitled to oppose Plaintiffs' Motion for Preliminary Injunction, ECF No. 21, and are now scheduled to do so May 15, 2023, per this Court's Order. ECF No. 75. In that response, Defendants may challenge Plaintiffs' showing of irreparable harm, including by contending that any harm Plaintiffs will suffer from violation of their Fourteenth Amendment rights is not sufficiently imminent to warrant preliminary injunctive relief. They likewise may contest the United States' submission that, even with a wind-down period, the Health Care Ban will cause "imminent, irreparable harm to transgender adolescents" who depend on the treatments the law proscribes to alleviate their gender dysphoria. Mem. in Supp. of Pl.-Intervenor United States' Mot. for Prelim. Inj., ECF No. 41 (the "United States' Preliminary Injunction Motion") at 24 n.60. What Defendants may not do is shoehorn those arguments into an unrecognizable procedural motion and win constructive denial of Plaintiffs' request for a preliminary injunction without even bothering to file an opposing brief.

"The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that

2

is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Thus, "it is generally inappropriate for a federal court at the preliminary-injunction stage to give a final judgment on the merits." *Id.*

As Defendants point out, Federal Rule of Civil Procedure 65(a)(2) permits courts to "advance [a] trial on the merits and consolidate it with [a] hearing" on a preliminary injunction "[b]efore or after" the latter has been held. Fed. R. Civ. P. 65(a)(2). But the Rule plainly is intended to foster judicial efficiency by avoiding repetition—not to permit preliminary injunction motions to languish for months while the parties undertake full discovery and merits proceedings. Indeed, when subsection (a)(2) was added to Rule 65 in 1966, the Advisory Committee expressly cautioned that "*[t]he fact that the proceedings have been consolidated should cause no delay in the disposition of the application for the preliminary injunction*." Notes of Advisory Committee on Rules—1966 Amendment, Fed. R. Civ. P. 65(a)(2) (emphasis added); *see also* 11A Fed. Prac. & Proc. Civ. § 2950 (3d ed. Apr. 2023 Update) ("Desirable though the Rule 65(a)(2) procedure is when conditions warrant it, it would be unfortunate if consolidation were granted automatically in any case in which plaintiff seeks a preliminary injunction. Thus, the Supreme Court has cautioned that although consolidation may be used to real advantage in some cases, it generally is inappropriate") (citing *Camenisch*, 451 U.S. 390).

The discordance between Defendants' motion and the purpose of Rule 65(a)(2) is not surprising. Although they purport to ask this Court to "consolidate" preliminary-injunction proceedings with a trial on the merits, Defendants' true request is to simply skip the preliminary-injunction phase altogether—as if no motions for preliminary injunctive relief had been filed at all.

3

Tellingly, if Defendants had their way, this Court would *never* consider the propriety of issuing a preliminary injunction because the grant or denial of a permanent injunction in early 2024 would moot the issue. *See* Defs.' Mot. at 4 (asking to "reset the briefing schedule for trial in January 2024, or as the Court is available, such that the Court has sufficient time to issue a ruling before the law's cutoff date of March 31, 2024."). Defendants' request is counter to Rule 65(a)(2)'s purpose and should be denied.

Defendants' effort to contest Plaintiffs' showing of irreparable harm in a scheduling motion is not only procedurally improper, it is substantively meritless. Defendants contend that, in light of the wind-down period provided for in the Health Care Ban, Plaintiffs fail to show imminent irreparable harm. But Plaintiffs have alleged that they cannot continue to receive the same care they are currently receiving once the Health Care Ban is in effect. Rather, "beginning on July 1, 2023, if [they] are to remain in Tennessee, [their] medication will be titrated down in preparation for the cutoff imposed by the Ban." Compl. ¶¶ 102, 118; see also *id.* ¶ 131 (noting that Plaintiff John Doe cannot safely receive a lower dosage of puberty blockers and so will be unable to continue treatment in any capacity). Notwithstanding the State's position today, it is apparent from the legislative record that those who passed the law agreed with that proposition and did not view the wind-down provision as an opportunity to simply maintain the status quo until April 2024. As the sponsor of the Health Care Ban explained in response to a question about what kind of treatment would be available to transgender youth who were already receiving gender-affirming care:

> "[T]hat's why the bill after its effective date, July 1, any of the procedures that have begun before then, doctors and their patients have until next March to actually stair-step those children off of these dangerous medications. It would not be a good idea according to everything we heard in committee to immediately just have a halt on

that. But over time, they're able to wean them off of these so that their bodies can heal."[2]

The irreparable harm that will befall Dr. Lacy's existing and prospective patients as soon as the law takes effect is equally evident. Prospective patients will be unable to start care, and existing patients will be unable to transition to new types of care. And as Dr. Lacy has testified, she will have to titrate down patients who would not be in a position to leave the state to seek care after the wind-down period expires because it is medically irresponsible to stop hormone therapy suddenly. *See* Decl. of Susan N. Lacy, MD, FACOG, ECF No. 28, ¶ 19 ("I anticipate that some of my current minor patients will be able to continue to receive care outside Tennessee after March 31, 2024, but for those who are unable to do so, I will have to modify the course of treatment I would otherwise provide to prepare them for the termination of medically necessary care.").

As a doctor committed to treating transgender patients, there is nothing "remote" or "speculative" about the harm Dr. Lacy complains of on their behalf. But if more evidence is needed to prove this undeniable fact, Dr. Lacy could provide it in a reply declaration in further support of the preliminary injunction. Likewise, the Minor Plaintiffs could provide additional information about the care they expect to receive if the law goes into effect. The Court will have the benefit of that information when deciding whether Plaintiffs are entitled to preliminary injunctive relief, and there is no reason to pretermit that assessment by granting Defendants' unusual motion.

---

[2] Even if Defendants were correct about the care provided during the wind-down period (which they are not), Minor Plaintiffs and their parents have averred that they face other immediate non-compensable harms, such as emotional stress over the permanent physical changes that will occur if they cannot continue care and the upheaval that would be caused by traveling or moving out of state for treatment. *See Decl. of L.W.*, ECF No. 22, ¶ 21; *Decl. of John Doe*, ECF No. 24, ¶ 12; *Decl. of Ryan Roe*, ECF No. 26, ¶¶ 25–26; *Decl. of Rebecca Roe*, ECF No. 27, ¶ 32; *Decl. of Jane Doe*, ECF No. 25, ¶¶ 26–27; *Decl. of Samantha Williams*, ECF No. 23, ¶ 29. As explained in Plaintiffs' moving papers, cisgender patients receiving the same treatment face no such harm.

## II. Plaintiffs Did Not Unreasonably Delay in Bringing this Action and the Time to Respond Does Not Prejudice Defendants.

Without saying so directly, Defendants suggest that Plaintiffs' request for preliminary injunctive relief prior to the law's effective date is barred by laches. "Laches is an equitable doctrine which may be applied to deny relief to a party whose 'unconscionable delay in enforcing his rights has prejudiced the party against whom the claim is asserted.'" *Memphis A. Phillip Randolph Inst. v. Hargett*, 473 F. Supp. 3d 789, 792 (M.D. Tenn. 2020) (Richardson, J., quoting Eli J. Richardson, *Eliminating the Limitations of Limitations Law*, 29 Ariz. St. L. J. 1015, 1065–67 (1997)). In the Sixth Circuit, the "party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it." *Hargett*, 473 F. Supp. 3d at 793 (citing *United States v. City of Loveland, Ohio*, 621 F.3d 465, 473 (6th Cir. 2010)). "But even if the party can show both required elements of laches, the court is not required to apply laches." *Hargett*, 473 F. Supp. 3d at 793; *see id.* ("Dismissal under the laches doctrine is not mandatory and is appropriate only in the sound discretion of the court") (internal citations and quotations omitted).

Defendants show neither element. As to the first, Defendants' filing is a masterclass in contradictions. In the same breath as they complain about the amount of time it took Plaintiffs to initiate this action and seek preliminary injunctive relief, they insist that they cannot possibly respond until June 2—six weeks after Plaintiffs' motion was filed. Defs.' Mot. at 10–11. The case, Defendants note, raises "complex issues of constitutional law [and] is based on a complicated and developing field of science," and necessitates "time to develop expert and fact witness testimony." *Id.* at 10. Yet they urge that the *seven* weeks Plaintiffs needed to prepare their filing—including time spent working with vulnerable adolescents preparing to reveal intensely personal facts in a public lawsuit over a controversial law—"standing alone" justifies denying the motion for

6

injunctive relief (or constructively denying it by deferring consideration until a full trial can be held).³ *Id.* Defendants simply cannot have it both ways. If they require no less than six weeks to develop a response to Plaintiffs' motion, surely an extra week does not constitute unreasonable delay.⁴

On the second point, Defendants likewise fall short. With over two months between the date of Plaintiffs' filing and the effective date of the law, Defendants have ample time to prepare a response—far more time than the rules of the Court contemplate. M.D. Tenn. R. 7.01(a)(3) ("[A]ny party opposing a motion must serve and file a memorandum of law in response . . . not later than fourteen (14) days after service of the motion . . . "). In any event, it blinks reality to suggest that Defendants were not aware this challenge was coming before it was filed. Similar legislation has led to litigation and motions for preliminary injunctive relief in other states. *See, e.g.*, *Brandt v. Rutledge*, No. 21-cv-450 (D. Ark. 2021); *Eknes-Tucker v. Marshall*, No. 2:22-cv-184 (M.D. Ala. 2022); *K.C. v. Individual Members of Med. Licensing Bd. of Indiana*, No. 1:23-cv-

---

³ The out-of-circuit case on which the Defendants rely in arguing that there is not irreparable harm because of the purported "delay" in filing this lawsuit, *Thompson v. Alabama*, No. 2:16-CV-783-WKW, 2017 WL 3223915 (M.D. Ala. July 28, 2017), is inapposite for multiple reasons. Most pertinently, *Thompson* was decided on a *preliminary injunction motion*—which the parties briefed and for which the court heard oral argument and issued an opinion—not, like Defendants attempt here, on an unusual motion to reset the briefing schedule.

⁴ Defendants apparently do not hold themselves to the same standard of urgency they ask this Court to impose on Plaintiffs. At least twice in 2022 alone, the Tennessee Attorney General sought preliminary injunctive relief against federal agency rules more than six weeks after they were issued. *See* Mot. for a Prelim. Inj., *Tennessee et al. v. U.S. Dep't of Educ. et al.*, No. 3:21-cv-00308 (E.D. Tenn. Sept. 2, 2022) (challenging rules and guidance issued on June 15, 22, and 23, 2022); Mot. for a Prelim. Inj., *Tennessee et al v. U.S. Dep't of Agriculture et al.*, No. 3:22-cv-00257 (E.D. Tenn. July 26, 2022) (challenging rules and guidance issued on May 5 and June 14, 2022). In the latter case, Tennessee and its co-plaintiffs claimed they would face irreparable harm twenty days after they filed their preliminary injunction motion, and asked the court for a briefing schedule requiring a response in just seven days. Tennessee, however, failed to serve the defendants and the court denied the request to expedite. *See* Order, *Tennessee et al. v. U.S. Dep't of Agriculture et al.*, No. 3:22-cv-00257 (E.D. Tenn. Aug. 10, 2022).

595 (S.D. Ind. 2023). And the exact issue—a ban on gender-affirming care for minors—was enjoined before its effective date in Arkansas and Alabama. *See Brandt ex rel. Brandt v. Rutledge*, 47 F.4th 661, 672 (8th Cir. 2022) (affirming preliminary injunction against similar ban from Arkansas), *reh'g en banc denied*, 2022 WL 16957734 (8th Cir. Nov. 16, 2022); *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1151 (M.D. Ala. 2022) (preliminary injunction against similar ban in Alabama), *appeal filed*, No. 22-11707 (11th Cir. May 18, 2022). But if there were any doubt as to whether the Health Care Ban would face a similar challenge, counsel for Plaintiffs issued a press release on the day the law was signed making clear their intention to seek a preliminary injunction. Press Release, ACLU of Tennessee, *Tennessee Bans Gender-Affirming Care for Transgender Youth* (Mar. 2, 2023), https://www.aclu.org/press-releases/tennessee-bans-gender-affirming-care-for-transgender-youth ("We will not allow this dangerous law to stand. . . . We are dedicated to overturning this unconstitutional law and are confident the state will find itself completely incapable of defending it in court."). Accordingly, Defendants are not prejudiced by any filing delay and there is no basis to preemptively deny Plaintiffs' motion for injunctive relief.[5]

### III. The Extension the Court Provided Gives Defendants Sufficient Time to Submit Their Opposition.

This Court has *sua sponte* set the Defendants' date to oppose the request for a preliminary injunction for May 15 (24 days from filing and 21 days from service). This extension affords Defendants sufficient time to submit their opposition to Plaintiffs' request for preliminary injunctive relief and will still allow briefing to be complete before Memorial Day so the Court could review the papers, schedule and conduct oral argument, and issue an opinion in advance of

---

[5] Doubling down on their double standard, Defendants fault Plaintiffs' "experienced counsel" for the imagined delay given that counsel has filed similar suits in other jurisdictions, Defs.' Mot. at 9, while absolving themselves of any reciprocal obligation to anticipate this litigation.

8

July 1. As an additional accommodation to Defendants, Plaintiffs would be willing to adjourn Defendants' deadline to respond to the complaint from May 15 to a date that is 14 days after a decision on the preliminary injunction.

**IV. Defendants' Proposed Consolidation Would Also Constructively Deny The United States' Motion For a Preliminary Injunction.**

Even if Defendants were able to establish that Plaintiffs have not shown a likelihood of irreparable harm beginning on July 1, 2023 (which they cannot), the Proposed-Intervenor, the United States, has also sought a facial state-wide preliminary injunction on behalf of all Tennesseans affected by the Health Care Ban, including all "transgender adolescents [who] need the proscribed treatments to address gender dysphoria" but who will not be able to access it starting July 1. *See* United States' Prelim. Inj. Mot. at 24. "[I]n a multiple-plaintiff case, a court need not consider the standing of other plaintiffs once one plaintiff is determined to have standing." *Knight v. Montgomery Cty., Tennessee*, 592 F. Supp. 3d 651, 671 (M.D. Tenn. 2022) (Richardson, J.,). Thus, in light of the United States' request for facial injunctive relief, Defendants' attempts to dispute the imminent harm to the individual Minor Plaintiffs are irrelevant. Because the United States seeks a preliminary injunction on behalf of all transgender minors living in Tennessee, including those who have not begun care, and the medical providers who would treat them, it would still be necessary for the Court to rule on the need for a preliminary injunction.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Reset Briefing Schedule and Consolidate Preliminary Injunction Hearing with Trial on the Merits should be DENIED.

Dated: May 4, 2023                  Respectfully submitted,

s/ *Stella Yarbrough*  
Stella Yarbrough, BPR No. 033637  
Lucas Cameron-Vaughn, BPR No. 036284**  
Jeff Preptit, BPR No. 038451**  
ACLU Foundation of Tennessee  
P.O. Box 120160  
Nashville, TN 37212  
Tel.: 615-320-7142  
syarbrough@aclu-tn.org  
lucas@aclu-tn.org  
jpreptit@aclu-tn.org  
*Attorneys for the Plaintiffs*

Joshua A. Block*  
Chase Strangio*  
American Civil Liberties Union Foundation  
125 Broad Street, Floor 18  
New York, NY 10004  
Tel.: 212-549-2593  
jblock@aclu.org  
cstrangio@aclu.org  
*Attorneys for the Plaintiffs*

Sruti J. Swaminathan*  
Lambda Legal Defense and Education Fund, Inc.  
120 Wall Street, 19th Floor  
New York, NY 10005  
Tel.: 212-809-8585  
sswaminathan@lambdalegal.org  
*Attorney for the Plaintiffs*

Avatara A. Smith-Carrington*  
Lambda Legal Defense and Education Fund, Inc.  
1776 K Street N.W., 8th Floor  
Washington DC 20006  
Tel.: 202-804-6245  
asmithcarrington@lambdalegal.org  
*Attorney for the Plaintiffs*

*admitted pro hac vice  
**application for admission pending

Tara Borelli*  
Lambda Legal Defense and Education Fund, Inc.  
1 West Court Square, Ste. 105  
Decatur, GA 30030  
Tel.: 404-897-1880  
tborelli@lambdalegal.org  
*Attorney for the Plaintiffs*

Joseph L. Sorkin*  
Dean L. Chapman, Jr.*  
Kristen W. Chin*  
Richard J. D'Amato*  
Theodore J. Salwen*  
Akin Gump Strauss Hauer & Feld LLP  
One Bryant Park  
New York, NY 10036  
Tel.: 212-872-1000  
jsorkin@akingump.com  
dchapman@akingump.com  
kristen.chin@akingump.com  
rdamato@akingump.com  
*Attorneys for the Plaintiffs*

Elizabeth D. Scott*  
Akin Gump Strauss Hauer & Feld LLP  
2300 N. Field Street, Suite 1800  
Dallas, TX 75201  
Tel.: 214-969-2800  
edscott@akingump.com  
*Attorney for the Plaintiffs*

Christopher J. Gessner*  
David Bethea*  
Akin Gump Strauss Hauer & Feld LLP  
Robert S. Strauss Tower  
2001 K Street N.W.  
Washington, DC 20006  
Tel.: 202-887-4000  
cgessner@akingump.com  
dbethea@akingump.com  
*Attorneys for the Plaintiffs*

# CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2023, the undersigned filed the foregoing Plaintiffs' Response in Opposition to Defendants' Motion to Reset Briefing Schedule and Consolidate Preliminary Injunction Hearing with a Trial on the Merits via this Court's electronic filing system, which sent notice of such filing to the following counsel of record:

| | |
|---|---|
| Steven J. Griffin<br>Clark L. Hildabrand<br>Trenton Meriwether<br>Ryan N. Henry<br>Brooke A. Huppenthal<br>Office of the Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, Tennessee 3720<br>(615) 741-959<br>steven.griffin@ag.tn.gov<br>clark.hildabrand@ag.tn.gov<br>trenton.meriwether@ag.tn.gov<br>ryan.henry@ag.tn.gov<br>brooke.huppenthal@ag.tn.gov | Tamica Daniel<br>United States Department of Justice<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Avenue NW<br>4CON<br>Washington, DC 20530<br>(202) 598-9636<br>Tamica.Daniel@usdoj.gov |
| Adam K. Mortara<br>Lawfair LLC<br>40 Burton Hills Blvd., Suite 200<br>Nashville, TN 37215<br>(773) 750-7154<br>mortara@lawfairllc.com | Alyssa C. Lareau<br>Coty Montag<br>Gloria Yi<br>United States Department of Justice<br>Federal Coordination and Compliance Section<br>950 Pennsylvania Avenue NW<br>4CON<br>Washington, DC 20530<br>(202) 305-2994<br>Alyssa.Lareau@usdoj.gov<br>Coty.Montag@usdoj.gov<br>Gloria.Yi@usdoj.gov |

1

| | |
|---|---|
| Cameron T. Norris (BPR# 33467)<br>Consovoy McCarthy PLLC<br>1600 Wilson Blvd., Suite 700<br>Arlington, VA 22209<br>(703) 243-9423<br>cam@consovoymccarthy.com | Ellen Bowden McIntyre<br>U.S. Attorney's Office (Nashville)<br>719 Church Street<br>Suite 3300<br>Nashville, TN 37203<br>(615) 736-2125<br>(615) 401-6626 (fax)<br>ellen.bowden2@usdoj.gov |

s/ *Stella Yarbrough*
Stella Yarbrough, BPR No. 033637
ACLU Foundation of Tennessee
P.O. Box 120160
Nashville, TN 37212
Tel.: 615-320-7142
syarbrough@aclu-tn.org