IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| L.W. et al., | ) | |
| *by and through her parents and next friends,* | ) | |
| *Samantha Williams and Brian Williams*, | ) | |
| | ) | No. 3:23-cv-00376 |
| Plaintiffs, | ) | JUDGE RICHARDSON |
| | ) | |
| v. | ) | |
| | ) | |
| JONATHAN SKRMETTI et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO RESET BRIEFING SCHEDULE AND CONSOLIDATE PRELIMINARY INJUNCTION HEARING WITH TRIAL ON THE MERITS**

**INTRODUCTION**

Plaintiffs remain convinced of their atextual misreading of the Act and rely on it to support an illusory emergency. To the extent urgency exists at all for the patient Plaintiffs, it is being caused by non-party Vanderbilt University Medical Center's decision to do what the law does not require of it—*i.e.*, change patient Plaintiffs' treatment before April 1, 2024. Dr. Lacy, for her part, can neither use her own ostrichism about the Act to self-inflict irreparable harm nor rely on third-party standing for her patients. Finally, it would be news to the entire federal judiciary if the United States had standing and an unheralded cause of action to sue Tennessee for sex discrimination.

Plaintiffs have yet to demonstrate an understanding that federal district courts adjudicate cases and controversies between parties and do not sit as courts of nullification "striking down" legislation. Courts can thus enjoin "'specific parties,'" not "'legal rules in the abstract.'" *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quoting *Murphy v. NCAA*, 138 S. Ct. 1461, 1486 (2018) (Thomas, J., concurring), in turn, citing Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018)).

> When a court enjoins the executive from enforcing a statute, it is not suspending, revoking, or delaying the effective date of that law. The statute remains in effect; the injunction simply forbids the named defendants to enforce the statute while the court's order remains in place. The injunction is nothing more than a judicially imposed non-enforcement policy, and its effect is no different from a non-enforcement policy that the executive imposes upon itself. It stops the executive from initiating enforcement proceedings while the injunction remains in effect.

Mitchell, 104 V. L. Rev. at 986-87; *accord Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) ("[F]ederal courts enjoy the power to enjoin individuals tasked with enforcing laws, not the laws themselves.")

1

Defendants already agree that continued treatment of current patients does not violate the Act and therefore cannot be the subject of enforcement.  So what putative conduct of the Defendants are the Plaintiffs seeking to enjoin?  How would a preliminary injunction from this Court right now materially change the relationship of the parties, given that VUMC (and Dr. Lacy) are going far outside the law's requirements in refusing care after July 1?  Plaintiffs provide no answers and because they have succumbed to the writ-of-erasure fallacy, they do not even realize they need to try.

Plaintiffs think they are litigating a nullification action.  The wish is father to the thought, of course, as it would be to Plaintiffs' distinct strategic advantage: a preliminary injunction hearing with minimal scrutiny of the factual bases of their claims.  There is no imminent emergency traceable to the Defendants' conduct.  The Court should grant Defendants' motion to set the preliminary injunction hearing and trial for January 2024.[1]

## ARGUMENT

I. **Plaintiffs should not be permitted to rush Defendants and the Court into a meaningless preliminary injunction hearing that will not change their circumstances.**

Plaintiffs rest their opposition to Defendants' motion on an interpretation of the Act that no reader of English could adopt.  When the Act says, "[i]t is not a violation … if … (B) [t]he performance or administration of the medical procedure on the minor began prior to the effective date of this act and concludes on or before March 31, 2024," § 68-33-103(b)(1), Plaintiffs read in an invisible "titration" requirement for current patients between July 1, 2023, and March 31, 2024.  Opp. 1, 4-5.  Instead of addressing the statute's text, they rely exclusively on legislative history—

---

[1] To be clear, Defendants moved for a consolidated trial on the merits as a significant concession to Plaintiffs' desire for a speedy resolution.  However, if Plaintiffs object so strongly to a trial in January 2024, *see* Opp. 3 (discussing purpose of Rule 65(a)(2)), then a mere evidentiary hearing on the preliminary injunction at that time is fine with Defendants too.

an unwelcome throwback to a different era in American jurisprudence. This case should not be made to dance to the tune of statutory "2+2=5."

Dr. Lacy even tries to assert the injuries of her patients, present and future, in defiance of Article III's requirements. Third party standing doctrine does not extend so far.

To be sure, there is ultimately a real case here—just not real urgency traceable to Defendants. If there is indeed an emergency, VUMC and Dr. Lacy are creating it and neither the Act nor Defendants coerced them into doing so. Defendants are not responsible for the actions of VUMC or whatever harm Dr. Lacy says she is going to visit upon her own patients.

### a. The plain language of the Act cannot be interpreted to create liability prior to April 1, 2024, for treatment already underway.

As discussed now several times, the prohibition on certain medical procedures for minors set forth in the new § 68-33-103(a), does not apply if "[t]he performance or administration of the medical procedure on the minor began prior to the effective date of this act and concludes on or before March 31, 2024," and their provider certifies that continued treatment is necessary. ECF 33-1 at 446, §§ 68-33-103(b)(1)(A), -(b)(3). In other words, the plain text allows each of the patient Plaintiffs to continue their current treatment through March 31, 2024, assuming their provider completes the required certification—notwithstanding Plaintiffs' or VUMC's mischaracterization or misunderstanding of the Act. And Dr. Lacy's patients who have started treatment prior to July 1 likewise may continue, assuming she certifies the continued treatment is necessary. The Act does not require VUMC or Dr. Lacy to stop ongoing treatment after July 1. Plaintiff Rebecca Roe has already acknowledged as much. *See* ECF. No. 27 at ¶31 (correctly stating the Act "allow[s] [treatment] to continue until March of 2024 for people like Ryan who had started on treatment").

3

The Act emphatically does not require "titration" or "winding down" starting July 1. Unsurprisingly, Plaintiffs never even quote the text. And statements by a single legislator in the legislative history change nothing. *See* Opp. 4-5. "[T]he text of a law controls over purported legislative intentions unmoored from any statutory text." *Oklahoma v. Castro-Huerta*, 142 S. Ct. 2486, 2496 (2022). And it is well established in Tennessee that "when the plain meaning of a statute is clear after application of the traditional tools of statutory interpretation, a court should not 'delve into the legislative history of an unambiguous statute.'" *State v. Deberry*, 651 S.W.3d 918, 930 (Tenn. 2022) (quoting *State v. Welch*, 595 S.W.3d 615, 624 (Tenn. 2020)). But even if the Court were permitted to look at the legislative history, it should be "reluctant" to attribute statements made by legislators who voted for the law to the "legislative body as a whole" because "[w]hat motivates one legislator to make a speech about a statute is not necessarily what motivates scores of others to enact it.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2256 (2022) (quoting *United States v. O'Brien*, 391 U.S. 367, 384 (1968)). "The remarks of a single legislator, even [a] sponsor, are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown*, 441 U.S. 281, 311 (1979).

### b. Dr. Lacy lacks standing to assert the rights of current or future patients.

No longer arguing that Dr. Lacy will experience any irreparable injury herself, or any injury at all for that matter, Plaintiffs emphasize the supposed "harm that will befall Dr. Lacy's existing and prospective patients as soon as the law takes effect." Opp. 5. But nowhere in Dr. Lacy's declaration or in Plaintiffs' briefing have they clarified:

- whether any of Dr. Lacy's existing 20 patients has not started treatment now but will after July 1, 2023;

- whether any of her patients has gone to another provider in Memphis, such as Choices, which has committed to continuing treatment through March 2024; and

4

- how many of her existing 20 patients, all of whom are over 16-years old, will be adults by then.

Plaintiffs are the ones who requested a preliminary injunction and a breakneck pace. They cannot sandbag Defendants and this Court by waiting to provide information about the supposed imminent, irreparable harm that Dr. Lacy's current patients face until "a reply declaration in further support of the preliminary injunction." Opp. 5.

The absence of any of Dr. Lacy's patients in this case is yet more proof that Dr. Lacy lacks third-party standing to "complain[] . . . on their behalf." Opp. 5. Third-party standing is the "exception rather than the rule." *South Carolina v. Regan*, 465 U.S. 367, 380 (1984). A plaintiff may assert the rights of a third party only when (1) the plaintiff has a "close" relationship with the third party; and (2) some "hindrance" affects the third party's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). There is no hindrance to Dr. Lacy's current patients suing on their own behalf. Defendants would not have opposed allowing her minor patients to litigate pseudonymously, and the ACLU no doubt would have jumped at the chance to serve as their counsel. But two months after the law was signed, none of Dr. Lacy's minor patients has sued or requested a preliminary injunction. That is their decision to make, not Dr. Lacy's.

Dr. Lacy's attempt to invoke third-party standing for "unascertained" minors who might someday be her patients is on even worse footing because she has no relationship with those hypothetical future patients at all. *See Kowalski*, 543 U.S. at 131 (attorneys lacked third-party standing for potential future clients). That is probably why Plaintiffs' filings have focused on Dr. Lacy's concern about "abandoning her" existing "patients." (D.E. 33, PI Memo, at 417; see also

5

Case 3:23-cv-00376   Document 84   Filed 05/05/23   Page 6 of 16 PageID #: 743

- how many of her existing 20 patients, all of whom are over 16-years old, will be adults by then.

Plaintiffs are the ones who requested a preliminary injunction and a breakneck pace. They cannot sandbag Defendants and this Court by waiting to provide information about the supposed imminent, irreparable harm that Dr. Lacy's current patients face until "a reply declaration in further support of the preliminary injunction." Opp. 5.

The absence of any of Dr. Lacy's patients in this case is yet more proof that Dr. Lacy lacks third-party standing to "complain[] . . . on their behalf." Opp. 5. Third-party standing is the "exception rather than the rule." *South Carolina v. Regan*, 465 U.S. 367, 380 (1984). A plaintiff may assert the rights of a third party only when (1) the plaintiff has a "close" relationship with the third party; and (2) some "hindrance" affects the third party's ability to protect his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004). There is no hindrance to Dr. Lacy's current patients suing on their own behalf. Defendants would not have opposed allowing her minor patients to litigate pseudonymously, and the ACLU no doubt would have jumped at the chance to serve as their counsel. But two months after the law was signed, none of Dr. Lacy's minor patients has sued or requested a preliminary injunction. That is their decision to make, not Dr. Lacy's.

Dr. Lacy's attempt to invoke third-party standing for "unascertained" minors who might someday be her patients is on even worse footing because she has no relationship with those hypothetical future patients at all. *See Kowalski*, 543 U.S. at 131 (attorneys lacked third-party standing for potential future clients). That is probably why Plaintiffs' filings have focused on Dr. Lacy's concern about "abandoning her" existing "patients." (D.E. 33, PI Memo, at 417; see also

5

D.E. 1, Compl., at 32; D.E. 28, Lacy Declaration at 242.)  A doctor cannot abandon a patient that the doctor does not already treat.[2]

### c. Plaintiffs have not even argued, much less shown that any preliminary injunction will cure their imaginary or VUMC-created July 1 problem.

"The required showing of irreparable harm cannot properly be premised on harm that would not be alleviated by the particular preliminary injunction being sought."  *Patel v. AR Grp. Tennessee, LLC*, No. 3:20-CV-00052, 2020 WL 5849346, at *8 (M.D. Tenn. Oct. 1, 2020) (Richardson, J.).  And yet in their papers, Plaintiffs have never once established how enjoining Defendants from enforcing the Act against VUMC in connection with patient Plaintiffs or Dr. Lacy in connection with her current patients could possibly make any difference given what the Act says and what Defendants have acknowledged.

Injury in fact is one thing, but irreparable harm requires a "higher threshold" than mere Article III standing.  *Nat'l Fair Hous. All. v. Carson*, 330 F. Supp. 3d 14, 63 (D.D.C. 2018). Neither the Act nor Defendants have coerced VUMC into its apparent decision to deny patient Plaintiffs care after July 1.  Neither the Act nor Defendants have coerced Dr. Lacy into her view that the Act requires her to end or modify her current patients' care after July 1.  The uncoerced actions of VUMC cannot create irreparable harm for the patient Plaintiffs, and Dr. Lacy cannot inflict cognizable irreparable harm upon herself.

Causation is lacking when the plaintiff's "alleged harms arise not from [third parties] acting under the command of [the challenged law], but rather from the [third parties'] voluntary choice to go above and beyond [the challenged law]."  *Crawford v. U.S. Dep't of Treasury*, 868 F.3d 438,

---

[2] The Supreme Court has also abrogated decisions such as *June Medical Services L.L.C. v. Russo*, 140 S. Ct. 2103 (2020), that "ignored the Court's third-party standing doctrine," *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2275-76 & n.61 (2022).

6

457 (6th Cir. 2017) (emphasis omitted).  If VUMC has "legitimate discretion" not to cause the

Plaintiffs' harm, that discretion "breaks the chain" of causation between Plaintiffs and the Act.

*Turaani v. Wray*, 988 F.3d 313, 316-17 (6th Cir. 2021).  And Defendants, of course, cannot be

held accountable for third parties' "inaccurate" reading of the Act.  *Whitewater Draw Nat. Res.*

*Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1015 (9th Cir. 2021).  If providers incorrectly believe

the Act mandates a change in ongoing treatments on July 1, that false belief does not entitle

Plaintiffs to an injunction.[3]  And this Court can remedy that misperception by simply saying what

the Act does already: "It is not a violation" to continue a procedure that "began prior to [July 1]

and concludes on or before March 31, 2024." § 68-33-103(b)(1)(B); see *Hawkins v. Haaland*, 991

F.3d 216, 230-31 (D.C. Cir. 2021) (explaining that third parties' misunderstanding of the law does

not create causation and that the "misunderstanding … would presumably be corrected by today's

decision, which explains" why the misunderstanding is wrong).

Worse for Dr. Lacy—Defendants have already informed her that her reading of the law is

wrong.  If she stops treating current patients because of her confusion, then whatever harm she is

suffering has been inflicted upon herself.  Equity does not redress self-inflicted harms.  *Livonia*

*Prop. Holdings, L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724,

740 (E.D. Mich.), *aff'd sub nom. Livonia Properties Holdings, LLC v. 12840-12976 Farmington*

*Rd. Holdings, LLC*, 399 F. App'x 97, 104 (6th Cir. 2010) ("self-inflicted harm is not the type that

---

[3] The patient Plaintiffs and their parents further assert that even if their ongoing treatment could continue past July 1—as Rebecca Roe admits it can—they would still face "emotional stress" related to permanent physical changes that would occur if they cannot find another provider or the "upheaval that would be caused by traveling or moving out of state for treatment."  Opp. 5 n.2. But the potential emotional harm they describe would spring directly from Plaintiffs' own egregious misreading of the plain statutory text or VUMC's yet-to-be-explained-or-proved decision to stop treatment before being required to do so.  It has nothing to do with the Act or any of the Defendants.

injunctions are meant to prevent") (citing *Wright & Miller*, 11A Fed. Prac. & Proc. Civ. § 2948.1 (3d ed.)).

Plaintiffs are transparently seeking to have the Court address the merits of their claims on as thin a record as possible. Despite having months to prepare their case, Plaintiffs have resisted voluntary discovery. Plaintiffs have medical records from VUMC (and have apparently had them for quite some time) but refuse to produce them voluntarily, even when defense counsel offered an interim "attorneys'-eyes-only" agreement. Plaintiffs know the names of the patient Plaintiffs' other medical providers but refuse to disclose them. Plaintiffs refuse to even disclose the names of the pseudonymous parties on an attorneys'-eyes-only basis. There's always a reason. *We have not had a 26(f) conference.* (Exhibit A, May 3rd email from Counsel Stella Yarbrough; Exhibit B, May 3-4th email exchange with Counsel Joshua Block.) *We need a protective order.* (Exhibit A.) *We want to edit the protective order.* (Exhibit B.) *We want to redact medical records to take out our clients' names.* (Exhibit B.) *We do not think you deserve school records even though every minor plaintiff and parent talks about what happened at school.* (Exhibit B.)

While in a run-of-the-mill case these would be just ordinary back-and-forths, in this one they seem calculated to prejudice Defendants and their ability to discover facts directly relevant to the preliminary injunction. A week has passed in which Plaintiffs could have produced (1) medical records, (2) a list of providers, and (3) their own identities all under an attorneys'-eyes-only agreement that was on offer. Why refuse if not to prejudice Defendants and rig the record in Plaintiffs' favor? To top it off, while refusing voluntary discovery all week and not even giving names of all the plaintiffs, they still have the cheek to ask the Court to require Defendants to respond by May 15. Opp. 8.

8

Which gets to the important point about Plaintiffs' delay in even filing this suit. Nothing underscores Plaintiffs' writ-of-erasure fallacy more than their conflation of their lawyers (who surely want the Act nullified) with their case. Citing the time it took *counsel* to work with (find) reticent *plaintiffs* and prepare their declarations somehow justifies Plaintiffs' delay? Opp. at 6. If Plaintiffs were hesitant, that is Plaintiffs' fault. But, we are told, Defendants were supposed to pre-prepare for fact discovery against unknown (and still pseudonymous) plaintiffs. *Id.* at 6-7. It is not a "masterclass in contradictions" for Defendants to need time to discover facts about people whose names they still have not been given.[4] Plaintiffs knew the Legislature was considering this law before it passed, and their delays and discovery excuses should be taken into account when assessing the alleged urgency of having a preliminary injunction hearing by July 1.[5]

---

[4] Plaintiffs emphasize that their counsel put out "a press release on the day the law was signed making clear their intention to seek a preliminary injunction." Opp. 8. In preparing this reply, Defendants' counsel have pored over the press release, and nowhere does it mention a "preliminary injunction." What the press release does say, tellingly, is that minors such as the patient Plaintiffs "will be forced to lose access to such care after March 31, 2024, in Tennessee," not on July 1, 2023. Press Release, ACLU, Tennessee Bans Gender-Affirming Care for Transgender Youth (Mar. 2, 2023), https://www.aclu.org/press-releases/tennessee-bans-gender-affirming-care-for-transgender-youth#.

[5] Plaintiffs quibble with the Tennessee Attorney General seeking preliminary injunctive relief "[a]t least twice in 2022 alone" "more than six weeks after" federal agencies issued rules without prior notice and comment. Opp. 9 n.4. Neither is apposite. In *Tennessee v. U.S. Department of Education*, the agencies serially promulgated documents throughout June 2021 imposing new obligations. 615 F. Supp. 3d 807 (E.D. Tenn. 2022) (granting preliminary injunction ten months after States' 2021 motion), *appeal argued*, No. 22 5807 (6th Cir. Apr. 26, 2023). Two weeks after the last rule, Tennessee politely requested recission. Letter from General Slatery to President Biden (July 7, 2021), https://bit.ly/3sNdNNn. The agencies refused so a coalition of States sued a few weeks later. In *Tennessee v. U.S. Department of Agriculture*, Tennessee and twenty-one other States sought a preliminary injunction precisely six weeks after USDA's final rule, but Judge McDonough *denied* the motion to expedite because, *inter alia*, the States took more than two business days to serve the summons that the court took eight business days to issue. No. 3:22-cv-257, 2022 WL 5336196 (E.D. Tenn. Aug. 10, 2022).

## II. The putative intervention of the United States cannot create imminent harm where there is none because the United States lacks any independent cause of action.

Plaintiffs now change their tune and say that, even if they face no irreparable harm on July 1, others do—namely, "transgender minors living in Tennessee … who have not begun care" and "the medical providers who would treat them." Opp. 9. Who purports to represent these non-parties? The United States, with no identified cause of action upon which to sue. *Id.* (The United States does not purport to represent any medical providers.) Though the United States is a proposed intervenor (not a party) and has filed a proposed preliminary-injunction motion (not an actual one), Plaintiffs say this Court must rush to conduct a hearing before July 1 for the United States' sake.

Plaintiffs misstate basic civil procedure. The United States needs a cause of action to sue for any relief that goes beyond what the Plaintiffs could obtain. It has none. And it needs standing to assert the injuries of non-party and unidentified citizens of Tennessee.

First, the United States lacks a cause of action. The statute that authorizes the United States' intervention, 42 U.S.C. § 2000h–2, states that the United States can get "the same relief as if it had instituted the action." 42 U.S.C. § 2000h-2. But if the United States "had instituted" this action, then it could get nowhere. Congress has not given the United States a general cause of action to sue States for sex discrimination. "[T]he United States may not sue to enjoin violations of individuals' fourteenth amendment rights without specific statutory authority." *United States v. City of Philadelphia*, 644 F.2d 187, 201 (3d Cir. 1980). Section 2000h-2 "does not create an independent federal claim; it merely allows the United States Attorney General to intervene." *Sayman v. Nat'l Evaluation Sys., Inc.*, 2002 WL 598519, at *1 (N.D. Ill. Apr. 17). And no other statute creates a cause of action either. That omission is telling because, in other kinds of cases covered by § 2000h-2, Congress did create a cause of action for the United States. *See, e.g.*,

10

*Spangler v. United States*, 415 F.2d 1242, 1244 (9th Cir. 1969) (discussing 42 U.S.C. §2000c-6, which lets the United States sue schools who deny equal protection to students).

Second, the United States lacks Article III standing. If an intervenor "seeks additional relief beyond that which the plaintiff requests," then it "must demonstrate Article III standing." *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. 433, 439 (2017). The United States does not even argue it has independent standing in its complaint. The only conceivable theory that it could have tried to cobble together would be *parens patriae*, but that theory (which the United States has not invoked) fails. As relevant here, *parens patriae* is unavailable because the case involves "an identifiable group"—transgender minors in a single state who want to start a prohibited treatment after July 1—with no generalized injury to the United States "as a whole." *Chapman v. Tristar Prod., Inc.*, 940 F.3d 299, 306 (6th Cir. 2019).

That Plaintiffs resort to theories of standing the United States does not even offer—all the Department of Justice can say is that the United States has an "interest," not an "injury" (U.S. Opp. 1-2)—tells the Court all it needs to know. The intervention statute is not a panacea that transforms a case between Plaintiffs and Defendants into the very nullification proceeding that federal courts have no power to conduct.

## CONCLUSION

There is no July 1 emergency because the law is clear that current treatments can continue until April 1, 2024. No stray quotation from the legislative history can change that. Defendants' motion should be granted.

11

Dated: May 5, 2023                                        Respectfully submitted,

                                                          */s/ Steven J. Griffin*
Adam K. Mortara* (BPR# 40089)                             STEVEN J. GRIFFIN (BPR# 40708)
Lawfair LLC                                               Assistant Attorney General
40 Burton Hills Blvd., Suite 200                          CLARK L. HILDABRAND  (BPR# 38199)
Nashville, TN 37215                                       Senior Counsel
(773) 750-7154                                            TRENTON MERIWETHER  (BPR# 38577)
mortara@lawfairllc.com                                    Assistant Attorney General
                                                          RYAN N. HENRY (BPR# 40028)
Cameron T. Norris (BPR# 33467)                            Assistant Attorney General
Consovoy McCarthy PLLC                                    BROOKE A. HUPPENTHAL* (BPR# 40276)
1600 Wilson Blvd., Suite 700                              Assistant Attorney General
Arlington, VA 22209                                       Office of the Tennessee Attorney General
(703) 243-9423                                            P.O. Box 20207
cam@consovoymccarthy.com                                  Nashville, Tennessee 3720
*Counsel for Defendants*                                  (615) 741-959
                                                          steven.griffin@ag.tn.gov
                                                          clark.hildabrand@ag.tn.gov
                                                          trenton.meriwether@ag.tn.gov
                                                          ryan.henry@ag.tn.gov
                                                          brooke.huppenthal@ag.tn.gov

                                                          *Application for admission pending*

I hereby certify that on May 5, 2023, the undersigned filed the foregoing document via this

Court's electronic filing system, which sent notice of such filing to the following counsel of record:

| COUNSEL OF RECORD | PARTY REPRESENTED |
|---|---|
| Stella Yarbrough<br>Lucas Cameron-Vaughn<br>Jeff Preptit<br>ACLU Foundation of Tennessee<br>P.O. Box 120160<br>Nashville, TN 37212<br>Tel.: 615-320-7142<br>syarbrough@aclu-tn.org<br>lucas@aclu-tn.org<br>jpreptit@aclu-tn.org<br><br>Joshua A. Block<br>Chase Strangio<br>American Civil Liberties Union Foundation<br>125 Broad Street, Floor 18<br>New York, NY 10004<br>Tel.: 212-549-2593<br>jblock@aclu.org<br>cstrangio@aclu.org<br><br>Sruti J. Swaminathan<br>Lambda Legal Defense and Education Fund, Inc.<br>120 Wall Street, 19th Floor<br>New York, NY 10005<br>Tel.: 212-809-8585<br>sswaminathan@lambdalegal.org<br><br>Avatara A. Smith-Carrington<br>Lambda Legal Defense and Education Fund, Inc.<br>1776 K Street N.W., 8th Floor<br>Washington DC 20006<br>Tel.: 202-804-6245<br>asmithcarrington@lambdalegal.org<br><br>Tara Borelli<br>Lambda Legal Defense and Education Fund, Inc. | Plaintiffs L.W., Samantha Williams, Brian Williams, John Doe, Jane Doe, James Doe, Ryan Doe, Rebecca Doe, and Susan N. Lacy |

| | |
|---|---|
| 1 West Court Square, Ste. 105<br>Decatur, GA 30030<br>Tel.: 404-897-1880<br>tborelli@lambdalegal.org<br><br>Joseph L. Sorkin<br>Dean L. Chapman, Jr.<br>Kristen W. Chin<br>Richard J. D'Amato<br>Theodore James Salwen<br>Akin Gump Strauss Hauer & Feld LLP<br>One Bryant Park<br>New York, NY 10036<br>Tel.: 212-872-1000<br>jsorkin@akingump.com<br>dchapman@akingump.com<br>kristen.chin@akingump.com<br>rdamato@akingump.com<br>jsalwen@akingump.com<br><br>Elizabeth D. Scott<br>Akin Gump Strauss Hauer & Feld LLP<br>2300 N. Field Street, Suite 1800<br>Dallas, TX 75201<br>Tel.: 214-969-2800<br>edscott@akingump.com<br><br>Christopher J. Gessner<br>David Bethea<br>Akin Gump Strauss Hauer & Feld LLP<br>Robert S. Strauss Tower<br>2001 K Street N.W.<br>Washington, DC 20006<br>Tel.: 202-887-4000<br>cgessner@akingump.com<br>dbethea@akingump.com | |
| Ellen B. McIntyre<br>U.S. Attorney's Office for the Middle District<br>of Tennessee<br>719 Church Street, Suite 300<br>Nashville, TN 37203<br>ellen.bowden2@usdoj.gov<br><br>Alyssa C. Lareau<br>United States Department of Justice<br>Federal Coordination and Compliance Section | Proposed Intervenor-Plaintiff United States of<br>America |

| | |
|---|---|
| 950 Pennsylvania Avenue NW<br>4CON<br>Washington, DC 20530<br>(202) 305-2994<br>Alyssa.Lareau@usdoj.gov<br><br>Coty Montag<br>United States Department of Justice<br>Federal Coordination and Compliance Section<br>950 Pennsylvania Avenue NW<br>4CON<br>Washington, DC 20530<br>(202) 305-2222<br>Coty.Montag@usdoj.gov<br><br>Gloria Yi<br>United States Department of Justice<br>Federal Coordination and Compliance Section<br>950 Pennsylvania Avenue NW<br>4CON<br>Washington, DC 20530<br>(202) 616-3975<br>Gloria.Yi@usdoj.gov<br><br>Tamica Daniel<br>United States Department of Justice<br>Housing and Civil Enforcement Section<br>950 Pennsylvania Avenue NW<br>4CON<br>Washington, DC 20530<br>(202) 598-9636<br>Tamica.Daniel@usdoj.gov | |

*/s/ Steven J. Griffin*
STEVEN J. GRIFFIN (BPR# 40708)
Assistant Attorney General
*Counsel for Defendants*

15