IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE NASHVILLE DIVISION

| | | |
|---|---|---|
| L.W. et al., | ) | |
| *by and through her parents and next friends,* | ) | |
| *Samantha Williams and Brian Williams*, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 3:23-cv-00376 |
| | ) | JUDGE RICHARDSON |
| v. | ) | |
| | ) | |
| JONATHAN SKRMETTI et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | **)** | |

## MOTION OF THE FAMILY ACTION COUNCIL OF TENNESSEE
## FOR LEAVE TO FILE MEMORANDUM OF LAW AS
## OF AMICUS CURIAE

Pursuant to Federal Rule of Civil Procedure 7(b) and Local Rules 15.01, The Family Action Council of Tennessee, Inc. ("FACT"), a Tennessee-based non-profit organization, by and through its counsel, Constitutional Government Defense Fund, a Tennessee-based non-profit litigation organization, moves this Court for leave to file the Amicus Brief[1] attached hereto and an order be entered making it part of the official record.

This Court has "inherent authority" to grant amici leave to file a memorandum of law. *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008). In exercising that authority, "[a]n amicus brief should normally be allowed when a party . . . is not represented at all, when the

---

[1] The undersigned certifies that no counsel for a party authored any part of this brief, and no person other than *amicus*, or its counsel made a monetary contribution intended to fund its preparation or submission.

amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Commission*, 125 F.3d 1062, 1063(1997). FACT meets the first and third of these three criteria.

FACT submits that organizationally it represents a view of parental rights that is "not represented at all." While sympathetic to the concern behind Plaintiffs' claim regarding the right of parents to make certain decisions for and on behalf of their minor children, Plaintiffs do not represent or speak on behalf of parents who would predicate parental right claims under the Fourteenth Amendment on the customary (common law) and natural law duties parents owe to their children to protect them from physical harms to their healthy and properly functioning bodies and organs. The Defendants, as state actors, have no personal interest *as parents* in the derivation of parental rights *in law* apart from defeating Plaintiffs' claim in that regard for the sake of the state's *positive law.*

Over its 17-year history, FACT has educated citizens and state legislators on public policies that address most closely who we are as human beings. Its efforts aim to vindicate the historic constitutional role and jurisdiction of the state to protect innocent human life, the institution of marriage and family, and other community interests served by traditional state police power regulations.

Framing *Amici*'s educational and advocacy work is the anthropology acknowledged and resident in customary and natural law, respectively. Amici seeks to urge citizens, policy makers, and judicial bodies in Tennessee to give proper regard to the fundamental and absolute rights of persons at common law. Consequently, when court decisions foreclose or defeat common law

principles and standards through constitutional rights interpretations divorced from the common law, *Amici*'s mission is compromised.

*Amicus's* interest is demonstrated by its state-wide advocacy for adoption of Article XI, section 18 of the Tennessee Constitution that defines the marital relationship *in terms of common law*, namely, "the historical institution and legal contract solemnizing the relationship of one man and one woman shall be the only legally recognized marital contract in this state." Its work in connection with the restoration of the common law foundation for the family has been recognized nationally. *See* https://familypolicyalliance.com/issues/tag/tennessee/ (Family Policy Alliance announces its "allies at Family Action Council of Tennessee have just launched a new initiative that could reshape the marriage debate in Tennessee and eventually the nation). Its work to restore the state's jurisdiction over the foundation for family life, the marital relationship, has also been recognized by the Tennessee Chapter of the American Civil Liberties Union. *See* https://www.aclu-tn.org/aclu-tn-family-action-council-lawsuit-undermines-equality-fosters-discrimination/ (press release calling attention to and objecting to "the Family Action Council of Tennessee'[s] filing of a lawsuit that challenges how the United States Supreme Court ruling in *Obergefell v. Hodges* applies to Tennessee marriage laws").

Finally, *Amicus's* president was a 12-year member of the General Assembly of the state of Tennessee and co-sponsor of Tennessee Code Ann. § 36-3-113, the legislative precursor to the aforesaid constitutional amendment.

For the foregoing reasons, counsel for Amicus/Movant respectfully requests that its motion be granted and that an order be entered admitting the attached brief as part of the record.

Dated: May 11, 2023                                  Respectfully submitted,

*/s/ David E. Fowler*

David Fowler, Esq.
Counsel for Constitutional Government
   Defense Fund
1113 Murfreesboro Road, No. 106-167
Franklin, TN. 37064-167
jthomsmith@cgdfund.com

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2023, the undersigned filed the foregoing document via this Court's electronic filing system, which sent notice of such filing to the following counsel of record:

| **COUNSEL OF RECORD** | **PARTY REPRESENTED** |
|---|---|
| Stella Yarbrough<br>Lucas Cameron-Vaughn<br>Jeff Preptit<br>ACLU Foundation of Tennessee<br>P.O. Box 120160<br>Nashville, TN 37212<br>Tel.: 615-320-7142<br>syarbrough@aclu-tn.org<br>lucas@aclu-tn.org<br>jpreptit@aclu-tn.org<br><br>Joshua A. Block<br>Chase Strangio<br>American Civil Liberties Union Foundation<br>125 Broad Street, Floor 18<br>New York, NY 10004<br>Tel.: 212-549-2593<br>jblock@aclu.org<br>cstrangio@aclu.org<br><br>Sruti J. Swaminathan<br>Lambda Legal Defense and Education Fund, Inc.<br>120 Wall Street, 19th Floor<br>New York, NY 10005<br>Tel.: 212-809-8585<br>sswaminathan@lambdalegal.org | Plaintiffs L.W., Samantha Williams, Brian Williams, John Doe, Jane Doe, James Doe, Ryan Doe, Rebecca Doe, and Susan N. Lacy |

Avatara A. Smith-Carrington
Lambda Legal Defense and Education Fund, Inc.
1776 K Street N.W., 8th Floor
Washington DC 20006
Tel.: 202-804-6245
asmithcarrington@lambdalegal.org

Tara Borelli
Lambda Legal Defense and Education Fund, Inc.
1 West Court Square, Ste. 105
Decatur, GA 30030
Tel.: 404-897-1880
tborelli@lambdalegal.org

Joseph L. Sorkin
Dean L. Chapman, Jr.
Kristen W. Chin
Richard J. D'Amato
Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Tel.: 212-872-1000
jsorkin@akingump.com
dchapman@akingump.com
kristen.chin@akingump.com
rdamato@akingump.com

Elizabeth D. Scott
Akin Gump Strauss Hauer & Feld LLP
2300 N. Field Street, Suite 1800
Dallas, TX 75201
Tel.: 214-969-2800
edscott@akingump.com

Christopher J. Gessner
David Bethea
Akin Gump Strauss Hauer & Feld LLP
Robert S. Strauss Tower
2001 K Street N.W.
Washington, DC 20006
Tel.: 202-887-4000
cgessner@akingump.com
dbethea@akingump.com

| | |
|---|---|
| Ellen B. McIntyre<br>U.S. Attorney's Office for the Middle District of Tennessee<br>719 Church Street, Suite 300<br>Nashville, TN 37203<br>ellen.bowden2@usdoj.gov | Proposed Intervenor-Plaintiff United States of America |
| Steven J. Griffin (BPR# 40708)<br>Assistant Attorney General<br>steven.griffin@ag.tn.gov<br><br>Clark L. Hidabrand (BPR# 38199)<br>Deputy Chief of Staff & Senior Counsel<br>clark.hildabrand@ag.tn.gov<br><br>Trenton Meriwether (BPR# 38577)<br>Assistant Attorney General<br>trenton.meriwether@ag.tn.gov<br><br>Ryan N. Henry (BPR# 40028)<br>Assistant Attorney General<br>ryan.henry@ag.tn.gov<br><br>Brooke A. Huppenthal (BPR# 40276)<br>Assistant Attorney General<br>brooke.huppenthal@ag.tn.gov<br><br>Office of the Tennessee Attorney General<br>P.O. Box 20207<br>Nashville, Tennessee 3720<br>(615) 741-959<br><br>Adam K. Mortara* (BPR# 40089)<br>Lawfair LLC<br>40 Burton Hills Blvd., Suite 200<br>Nashville, TN 37215<br>(773) 750-7154<br>mortara@lawfairllc.com<br><br>Cameron T. Norris (BPR# 33467)<br>Consovoy McCarthy PLLC<br>1600 Wilson Blvd., Suite 700<br>Arlington, VA 22209 | Defendants: Jonathan Skrmetti, in his official capacity as Tennessee Attorney General and Reporter,<br><br>Tennessee Department of Health ("TDH"),<br><br>Ralph Alvarado, in his official capacity as Commissioner of TDH,<br><br>Tennessee Board of Medical Examiners ("BME"),<br><br>Melanie Blake, in her official capacity as President of BME,<br><br>Stephen Lloyd, in his official capacity as Vice President of BME,<br><br>Randall E. Pearson, Phyllis E. Miller, Samantha McLerran, Keith G. Anderson, Deborah Christiansen, John W. Hale, John J. McGraw, Robert Ellis, James Diaz-Barriga, and Jennifer Claxton, all in their official capacities as members of BME, and<br><br>Logan Grant, in his official capacity as Executive Director |

| | |
|---|---|
| (703) 243-9423<br>cam@consovoymccarthy.com | of the Tennessee Health Facilities Commission. |

        */s/ David E. Fowler*
        DAVID E. FOWLER (BPR #014063)

        *Counsel for Amicus*

IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE NASHVILLE DIVISION

| | | |
|---|---|---|
| L.W. et al., *by and through her parents and next friends, Samantha Williams and Brian Williams*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 3:23-cv-00376 JUDGE RICHARDSON |
| v. | ) ) | |
| JONATHAN SKRMETTI et al., | ) ) | |
| Defendants. | ) ) **)** | |

**ARGUMENT**

    **I.**       **Introduction.**

The interpretation of the Constitution must be "centered on constitutional text *and* history." *N.Y. State Rifle & Pistol Assn. v. Bruen*, 142 S.Ct. 2111, 2128-29 (2022) (emphasis added). Even though *Bruen* adjudicated the constitutionality of a state law against a claimed Second Amendment right, not the Fourteenth Amendment, this "standard accords with how we protect other constitutional rights" and "assess" them. *Id*. at 2130; *see also Dobbs v. Jackson Women's Health Organization*, 142 S.Ct. 2228, 2235 (2022) ("Historical inquiries of this nature are essential whenever we are asked to recognize a new *component* of the 'liberty' protected by the Due Process Clause because the term 'liberty' alone provides little guidance.").

The issue in the present case is whether (1) the right of a parent in relation to his or her minor child carries a "component" by which the parent can authorize third party medical providers subject to state regulation to injure the healthy body and limbs of another person, even if that

person is their minor child, and (2) that right is protected by the Fourteenth Amendment to the United States Constitution.

## II. Common Law Must Be Used to Determine Non-Textual Constitutional Rights.

"The common law is our birthright and inheritance and that our ancestors brought hither with them upon their emigration all of it, which was applicable to their situation. *The whole Structure of our present jurisprudence stands upon the original foundations of the common law.*" Joseph Story, *Commentaries on the Constitution of the United States* § 157 (emphasis added) citing "Journal of Congress, Declaration of Rights of the Colonies, Oct. 14, 1774, p. 27 to 31. 1 Chalm. Opinion, 202, 220, 295; 1 Chalm. Annals 677, 681, 682; 1 Tuck. Black. Comm. 385; 1 Kent's Comm. 322; Journal of Congress, 1774, p. 28, 29; 2 Wilson's Law Lect. 48, 49, 50; I Tuck. Black. Comm. App. 380 to 384; Van Ness v. Packard, 2 Peters's Sup. R. 137, 144."

Thus, the precepts of the common law make for a "nomenclature of which the framers of the Constitution were familiar." *Minor v. Happersett*, 88 U.S. 162, 167 (1875). Consequently, "[t]he interpretation of the Constitution of the United States is necessarily influenced by the fact that its provisions are framed in the language of the English common law, and are to be read in the light of its history." *Smith v. Alabama*, 124 U.S. 465, 478 (1888); James Stoner, *Common-Law Liberty: Rethinking American Constitutionalism* (University Press of Kansas, 2003), 17-21 (summarizing common law background of constitutional provisions).

With respect to the English common law upon which Justice Story said "our jurisprudence stands," "as clear perhaps as any, which can be stated, as presumptively adopted, or applicable" in the colonies was "protection from personal injuries." Story, *Commentaries*, § 149.

This common law right to protection from personal injuries by third parties was not abrogated by the Fourteenth Amendment's Due Process Clause. With respect to due process, "[t]he

conclusion is . . . irresistible, that when the same phrase was employed in the Fourteenth Amendment to restrain the action of the States, it was used in the same sense and with no greater extent" than was true of the Fifth Amendment. *Hurtado v. California*, 110 U.S. 516, 535 (1884). And "[d]ue process of law" under the Fifth Amendment is to be "interpreted according to the principles of the common law." *Id.* at 535 (emphasis added); *see also Obergefell v. Hodges*, 135 S.Ct. 2584, 2633 (Thomas, J., dissenting) citing *Munn* v. *Illinois,* 94 U. S. 113 (1877) as an "example" of when "the Court recognized the relationship between the two Due Process Clauses and Magna Carta, see *id.,* at 123-124, and implicitly rejected the dissent's argument that "`liberty'" encompassed "something more . . . than mere freedom from physical restraint or the bounds of a prison," *id.,* at 142 (Field, J., dissenting)."

  III.    **The Absolute Right of "Personal Security" at Common Law Protects All Persons from Personal Injury by Third Parties.**

At common law, persons had three absolute rights: Personal security, liberty, and property. 1 William Blackstone, Commentaries on the Laws of England (1765), *129 (hereinafter "Blackstone's *Commentaries*") "[T]he preservation of these, inviolate, may justly be said to include the preservation of our civil immunities in their largest and most extensive sense." *Id*. Thus, "the first and primary end of human laws is to maintain and regulate these absolute rights of individuals." *Id*. at *124.

"The right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health, and his reputation. *Id*. at *129. This right extends not just to "those limbs and members that may be necessary to a man in order to defend himself or annoy his enemy," but "the rest of his person or body is also entitled, by the same natural right, to security

from the *corporal*[2] insults of menaces, assaults, beating, and wounding; though such insults amount not to destruction of life or member." *Id.* at 134 (emphasis added). It includes "[t]he preservation of a man's health from such practices as may prejudice or annoy it." *Id*. Thus, "[t]he least touching of another's person wilfully (sic), or in anger, is a battery; for the law cannot draw the line between different degrees of violence, and therefore totally prohibits the first and lowest stage of it; every man's person being sacred, and no other having a right to meddle with it in any the slightest manner." Blackstone's *Commentaries*, Book III, *120.

It is appropriate, then, for this Court to ask the same question about the Fourteenth Amendment posed by the United States Supreme Court about the first ten amendments: If the members of Congress, in later proposing for ratification the Fourteenth Amendment, had "engaged in the extraordinary occupation of [allegedly] improving the constitutions of the several states" by forbidding States to protect the body, limbs, and physical health of persons "would they not have declared this purpose in plain and intelligible language?" *Barron v. Baltimore*, 32 U.S. 243 (1833).

The answer must be no for two reasons. First, the state has a duty to protect all persons from such injuries by third parties. A right in a parent to authorize, on behalf of his or her minor child, a third party to inflict a personal injury to that child violates the absolute right to personal security and the duty owed to that child by the third party, and it is a violation of the parent's duty[3]

---

[2] According to Webster's 1828 Dictionary, the word "corporal" was defined as: "1. Belonging or relating to the body; as *corporal* pain, opposed to *mental*," **2.** Material; not spiritual." (emphasis in the original). While not all persons today may accord a spiritual dimension to the cosmos or to human existence (persons), the very nature of the Plaintiffs' transgender claims is that there is a non-material component to human existence not dependent on the corporal. Plaintiffs have certainly conceded that their claim rests upon that which is "mental," meaning it is the scope of the injuries from which persons were *then* protected at common law.

[3] At common law "rights of persons" are those "such as are due from every citizen" and "such as belong to him." Blackstone's *Commentaries*, *123. "[R]ights as well as duties" are reciprocal "of each other." *Id*.

to secure the child's absolute right to personal security. As respect parents, "protection" of their children, like maintenance, was considered "a natural duty." Blackstone's *Commentaries*, * 450. And the Supreme Court has recognized that rights of parents are in accord with their "natural duty." *Meyer v. Nebraska*, 262 U.S. 390, 400 (1923).

Second, to construe an enumerated right to due process to "deny or disparage others retained by the people," such as the common law right to personal security, is forbidden by the text[4] and history[5] of the Ninth Amendment.[6] Michael Stokes Paulsen, *Does the Constitution Prescribe Rules for Its Own Interpretation?* 103 NW. U.L. REV. 857, 884 (2009) (noting it "is remarkable that, in the voluminous academic discussion of the Ninth Amendment, so little is made of the obvious textual fact that the Ninth Amendment is a rule of construction").

IV.     Conclusion.

Whatever other sources this Court may consider for identifying rights and incorporating them against the states under the Fourteenth Amendment's Due Process Clause, the rights of the people in the states must be anchored in the extant common law in the several states to be incorporated into the Fourteenth Amendment. *Heller*, 554 U. S., at 634–635 ("Constitutional rights are enshrined with the scope they were understood to have *when the people adopted*

---

[4] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

[5] "This clause was manifestly introduced to prevent any perverse, or ingenious misapplication of the well known maxim, that an affirmation in particular cases implies a negation in all others; and *e converso*, that a negation in particular cases implies, an affirmation in all others." Story, *Commentaries*, §1898. *See also* Benjamin F. Wright (ed.) (2002) *The Federalist*, Paper No. 83 (Hamilton), 519. (New York, NY: MetroBooks) ("Every man of discernment must at once perceive the wide difference between SILENCE and ABOLITION. . . . The true test, therefore, of a just application of ["rules of legal interpretation"] is its *conformity to the source from which they are derived*," namely, the common law.).

[6] "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."

*them*.").7 This court should not add a "component" to the rights of parents that may be protected by the Constitution a right to authorize a third party subject to state regulation to injure the body, limbs, or health an otherwise healthy and properly function person, even if their child.

Dated: Respectfully submitted,

_____
David Fowler, Esq.
Counsel for Constitutional Government
 Defense Fund
1113 Murfreesboro Road, No. 106-167
Franklin, TN. 37064-167

---

7 The Second Amendment was adopted in 1791; the Fourteenth in 1868.