IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.W. et al., *by and through her parents and next friends, Samantha Williams and Brian Williams*, <br><br>    Plaintiffs, <br><br> v. <br><br> JONATHAN SKRMETTI et al., <br><br>    Defendants. | NO. 3:23-cv-00376 <br> JUDGE RICHARDSON |

## MEMORANDUM OPINION AND ORDER[1]

Pending before the Court is the United States' motion to intervene (Doc. No. 38, "Motion") and an accompanying memorandum in support of the Motion (Doc. No. 39). Defendants filed a response (Doc. No. 81), and the United States filed a reply (Doc. No. 101). For the reasons stated herein, the Motion will be granted.

## DISCUSSION

On April 20, 2023, Plaintiffs filed a complaint (Doc. No. 1), which alleges that Senate Bill 1, codified as Tennessee Code Annotated § 68-33-101 *et seq* (hereinafter, "SB1") violates the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the

---

[1] The foregoing discussion and analysis pertains only to the resolution of the instant Motion.

Fourteenth Amendment. (Doc. No. 1 at 35, 37). The complaint also alleges that SB1 is preempted by the Affordable Care Act ("ACA") and violates the ACA. (*Id.* at 38, 40).

On April 26, 2023, the United States filed a motion to intervene under Section 902 of the Civil Rights Act of 1964, codified as 42 U.S.C. § 2000h-2.[2] (Doc. No. 38). Defendants do not dispute that the United States has the right to intervene in this action. (Doc. No. 81 at 1). In their response, however, Defendants request that the Court circumscribe the United States' participation in the action. Specifically, Defendants argue that the United States may intervene to seek relief only from alleged violations of the Equal Protection Clause due to discrimination based on sex rather than from discrimination based on transgender status (*i.e.*, an individual being transgender).[3] (*Id.* at 3). Defendants further contend that the United States cannot seek relief broader than any relief to which Plaintiffs may be entitled, because (according to Defendants) it lacks standing to do so. (*Id.* at 4–6). The Court addresses each argument in turn below.

1. **The United States Has the Right to Intervene in this Action**

As noted above, Defendants do not dispute that the United States has the right to intervene in this action under 42 U.S.C. § 2000h-2, which reads:

> Whenever an action has been commenced in any court of the United States seeking relief from the denial of equal protection of the laws under the fourteenth amendment to the Constitution on account of race, color, religion, sex or national origin, the Attorney General for or in the name of the United States may intervene in such action upon timely application if the Attorney General certifies that the case is of general public importance. In such action the United States shall be entitled to the same relief as if it had instituted the action.

---

[2] Though not explicitly stated by the United States, the Court assumes that the United States seeks to intervene as a plaintiff in this case, as evidenced by its filing of its complaint in intervention (Doc. No. 38-2).

[3] "A transgender person is someone who fails to act and/or identify with his or her gender—i.e. someone who is inherently gender non-conforming." *Equal Employ't Opportunity Comm'n v. R.G. & G.R. Harris Funeral homes, Inc.*, 884 F.3d 560, 576 (6th Cir. 2018) (internal quotation marks omitted).

42 U.S.C. § 2000h-2.[4] Federal Rule of Civil Procedure 24(a)(1) recognizes that the "court must permit anyone to intervene who: (1) is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). It is widely recognized that § 2000h-2 confers such an unconditional right to intervene upon the United States.[5]

Defendants do not dispute that Plaintiffs seek relief from the denial of equal protection on the basis of sex discrimination. And the Court recognizes that although Plaintiffs allege that SB1 discriminates against individuals who identify as transgender, the Supreme Court has found that "it is impossible to discriminate against a person for being [] transgender without discriminating against that individual based on sex." *See Bostock v. Clayton Cnty. Ga.*, 140 S. Ct. 1731, 1741 (2020). Although the Court in *Bostock* made this finding within the context of Title VII, the Court finds that it is equally applicable to the Equal Protection context, at least insofar as it pertains to § 2000h-2. Defendants, for the purposes of the present Motion, do not appear to disagree with this conclusion—indeed, they do not dispute that the United States' intervention on the basis of alleged sex discrimination in violation of the Equal Protection Clause is permissible. Therefore, the Court agrees that the United States has the right to intervene in this case because Plaintiffs seek relief from SB1 on the basis that (according to Plaintiffs) it discriminates against individuals who identify as transgender, which (according to the Supreme Court) necessarily constitutes discrimination on the basis of sex.

---

[4] Attorney General Merrick Garland has certified that this case is of general public importance. (Doc. No. 38-1 at 2).

[5] As explained by Wright & Miller: "The United States also has an unconditional statutory right to intervene in actions seeking relief from the denial of equal protection of the laws under the Fourteenth Amendment to the Constitution on account of race, color, religion, or national origin." 7C Fed. Prac. & Proc. Civ. § 1906 (3d ed.)

## 2. The United States' Ability to Seek Relief from Discrimination Based on Transgender Status

Defendants argue that under § 2000h-2, the United States is limited to seeking relief for alleged discrimination based on sex and cannot also seek relief for discrimination based on transgender status. (Doc. No. 81 at 4). In its reply, the United States argues that there is no distinction between (1) discrimination against an individual who is transgender being unconstitutional because it is a form of sex discrimination, and (2) discrimination against an individual who is transgender being unconstitutional because the individual is transgender (*i.e.* because of their transgender status). (Doc. No. 101 at 3). The Court, however, is of the view that there is a distinction between these two concepts. It is one thing to say that discrimination against an individual who is transgender is unlawful because it is a form of sex discrimination, and it is quite another thing to say that such discrimination is unlawful because discriminating against a person based on transgender status is itself impermissible; unlike the former concept, the latter concept posits a direct link between unlawful discrimination and transgender status. And a review of the pertinent case law reveals that courts indeed treat these arguments as analytically distinct. *See e.g.*, *Equal Employ't Opportunity Comm'n.*, 884 F.3d at 576 (analyzing discrimination on the basis of sex and sex stereotypes separately from discrimination on the basis of transgender/transitioning status); *Brandt v. Rutledge*, 551 F. Supp. 3d 882, 889 (E.D. Ark. 2021) (finding that intermediate scrutiny applied to the plaintiffs' Equal Protection claim because the law in question relied sex-based classifications and because transgender people constituted a quasi-suspect class), *aff'd* 47 F.4th 661 (8th Cir. 2022); *Fain v. Crouch*, 618 F. Supp. 3d 313, 324 (S.D.W.V. 2022) (explaining that the Fourth Circuit applies intermediate scrutiny to laws discriminating based on sex or transgender status); *Flack v. Wis. Dept. of Health Servs.*, 328 F. Supp. 3d 931, 952 (W.D. Wisc. 2018) (recognizing that "heightened scrutiny may be appropriate

either on the basis of sex discrimination or through recognizing of transgender as a suspect or quasi-suspect class.").

Even accepting that these arguments are analytically distinct, however, the Court does not agree with Defendants that § 2000h-2 limits the United States' ability to seek relief on the basis that SB1 unlawfully discriminates based on transgender status. Section 2000h-2 describes the types of cases in which the United States may intervene—and, contrary to Defendants' suggestion, it does not circumscribe, or otherwise dictate, the scope of the United States' participation in the litigation once it has been granted intervenor-status.[6] It states, in pertinent part, that "whenever an action has been commenced. . . seeking relief from the denial of equal protection. . . on account of. . . sex. . . the United States may intervene in such action. . .." *See* 42 U.S.C. § 2000h-2. The provision says nothing about the *scope* of the United States' intervention in such actions.

At least one other court has discussed the issue of the scope of the United States' intervention under § 2000h-2. In *Spangler v. United States*, the Ninth Circuit in discussing the United States' intervention under § 2000h-2 remarked that

> A leading commentator, in referring to the intervenor with an absolute right to intervene, states, 'It would be meaningless to give him an absolute right to intervene in order to protect his interests, if once in the proceedings he was barred from raising questions necessary for his own protection,' 4 Moore's Fed. Practice, Par. 24.16(4), p. 117 (2d ed. 1968). Prior to the adoption of the F. R. Civ. P. in 1937, old equity Rule 37 barred an intervenor from raising issues which were not 'subordinate' to the original parties' pleadings. No similar provision was carried over into the 1937 rules, and courts have not generally adhered to the old subordination doctrine. *See*, 4 Moore's Fed. Practice, Par. 24.16(1), pp. 108-112 (2d ed. 1968).

---

[6] The only plausible limitation that the Court can divine from § 2000h-2 as to the United States' participation in an action in which it has a right to intervene is the provision's instruction that the "United States shall be entitled to the same relief as if it had instituted the action." *See* 42 U.S.C. § 2000h-2. Defendants, however, do not argue that this part of the provision affects the *basis* of the United States' relief. In other words, Defendants do not argue that the United States cannot pursue relief on the basis of discrimination based on transgender status because it would not be entitled to that relief had it (rather than Plaintiffs) instituted the action. Thus, the Court does not address that issue here.

415 F.2d 1242, 1245 (9th Cir. 1969). This discussion in *Spangler* highlights that intervenors are generally conferred the same ability to participate in the litigation as the original plaintiff(s). *See e.g.*, *United States v. $4,480,466.16 in Funds Seized From Bank of America Account Ending in 2653*, 942 F.3d 655, 661 (5th Cir. 2019) ("[u]nder federal law, an intervenor of right is treated as he were an original party and has equal standing with the original parties.") (internal quotation marks omitted); *United States v. UCB, Inc.*, 970 F.3d 835, 853 (7th Cir. 2020) (recognizing that an ordinary intervenor-plaintiff has the same right as the original plaintiff); *Hughes v. Abell*, 09-220, 2014 WL 12787807, at *4 (D.D.C. Feb. 10, 2014) (explaining that intervenors have the same rights under the Federal Rules as do parties).

Importantly, Defendants point to nothing that suggest that the language of § 2000h-2 was intended to change the ordinary rules applicable to intervenors. Therefore, given the ordinary treatment of intervenors as having the same rights as an original party, and in light of the plain text of § 2000h-2, the Court finds that § 2000h-2 does not prohibit the United States from seeking relief from discrimination based on transgender status. In other words, the United States at its option may pursue an argument that SB1 violates the Equal Protection Clause because it discriminates on the basis of transgender status.

3. **The Scope of Relief that the United States May Seek**

Defendants next argue that the United States cannot seek relief broader than that to which Plaintiffs are entitled. The Court need not decide this issue at this juncture. As the United States points out in its reply, the United States seeks the "exact same relief that [] Plaintiffs seek." (Doc. No. 101 at 6). Indeed, both Plaintiffs and the United States seek a statewide injunction of SB1. Should the Court at some point find that Plaintiffs are entitled to relief narrower than that which the United States seeks, the Court will consider whether it would be appropriate to award broader

relief to the United States than to Plaintiffs. However, the Court need not reach this issue at this juncture given that it has not yet determined whether (and, if so, to what extent) Plaintiffs are entitled to relief.

**4. Briefing Schedule**

In their response, Defendants request that the briefing schedule for the United States' motion for a preliminary injunction (Doc. No. 40) be decided separately from the briefing schedule for Plaintiffs' motion for a preliminary injunction (Doc. No. 21). The Court agrees that Defendants have had no obligation to respond to the United States' motion for a preliminary injunction prior to the Court's resolution of the present Motion. Given that the Court will permit the United States to intervene, the Court finds it appropriate to allow Defendants fourteen (14) days to respond to the United States' motion for a preliminary injunction from the date of entry of this order. A separate order consistent with this order will also be entered setting forth the briefing schedule on the United States' motion for a preliminary injunction.

## CONCLUSION

For the reasons stated herein, the Motion at Doc. No. 38 is GRANTED. The Clerk is DIRECTED to update the case caption to reflect the United States as an intervenor.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE