# EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.W. et al., *by and through her parents and next friends, Samantha Williams and Brian Williams*, | |
| Plaintiffs, | No. 3:23-cv-00376<br>JUDGE RICHARDSON |
| v. | |
| JONATHAN SKRMETTI et al., | |
| Defendants. | |

**<u>DECLARATION OF JOHN STILES</u>**

I, John Stiles,[1] declare as follows:

1. I am over the age of 18 years and am not a party to this action. I have actual knowledge of the following facts and, if called upon to testify to them, could and would do so competently. I am submitting this Declaration in support of Defendants' opposition to Plaintiffs' Motion for a Preliminary Injunction.

2. Tennessee recently passed a law prohibiting medical procedures performed on minors "for the purpose of: (A) Enabling a minor to identify with, or live as a purported identity inconsistent with the minor's sex, or (B) Treating purported discomfort or distress from a discordance between the minor's sex and asserted identity," Tenn. Code Ann. § 68-33-101, *et seq*. This Act will provide parents with necessary protections against manipulation and coercion on the part of health care providers, ex-spouses, and confused children to comply with demands for medical and surgical interventions aimed at "affirming" a child's professed discordant gender identity under threats of alienation or loss of a child to suicide.

3. No such parent and child-protective law exists in my home state. Providers have blatantly disregarded my decisions for my child's medical and mental health. Tennessee's Act will prevent its parents and children from suffering similar harm. It will restore the rights of all parents, not only those who agree with demands for "gender-affirming" medical interventions.

4. I am the father of an 18-year-old son, C (pseudonym), who had received medical treatment from the University of California San Francisco ("UCSF") Child & Adolescent Gender Center as a minor. UCSF had actively worked to prevent my participation in my son's care to the

---

[1] Declarant is submitting this Declaration using a pseudonym for himself and his son to protect the privacy of his child and family.

point of providing information to the attorney representing my son in family court aimed at stripping me of custody because I would not affirm my son in a discordant gender identity.

5. In fact, I knew nothing about my son receiving life-altering medical interventions until I received a statement from my insurance carrier showing that it had paid more than $209,000 to a child and adolescent gender clinic at UCSF. He was 17 years old. Even then, I did not know what the payment was for until I asked my ex-wife. She emailed me that she was "pleased" to report that our son had been given an implant of Supprelin (used to suppress testosterone) and was receiving estradiol (estrogen) pills.

6. My research on these substances showed that they chemically castrate patients and are even used specifically for that purpose in some cases for sex offenders. Yet, here my 17-year-old son was receiving these drugs from the gender clinic ostensibly to improve his health and well-being.

7. I have learned that Supprelin, a popular method for administering puberty blockers for adolescents like my son, requires surgical implantation. It is a surgical intervention administered to children under the age of 18, which is contrary to any testimony that surgical interventions are not prescribed for minors and not recommended by the "Standards of Care."

8. The surgical implantation of Supprelin into my son violated the family court's custody order, which stated that my son was not permitted to "undergo any gender identity related surgery" until he turned 18, absent a written agreement of both parents or order of the court, which UCSF had a copy of and made a record of the family court's custody order in C.'s patient notes. I did not agree to the surgical implantation, nor is there any court order permitting it. Yet, C.'s records show a surgical procedure performed on him to insert the Supprelin.

9. After UCSF surgically implanted my 17-year-old son with Supprelin LA (without my knowledge or consent, but paid for by my health insurance), UCSF clinicians discussed follow-up surgical options with him without both parents present, including breast implants, facial feminization, and bottom surgery. At the time, my son was 17 years and 5 months old.

10. C.'s patient notes state that his "family was involved in complex family custody case" and that I "adamantly opposed C.'s transition." This is not true. I would not oppose C.'s transition if it were medically safe for him to do so. However, my research showed significant evidence that medical transitioning is very unsafe.

11. I sought the information necessary to make an informed decision on my son's treatment. I asked UCSF clinicians about the safety of these treatments, citing the alarming research I found concluding that puberty blockers when administered to a minor, cause permanent damage to the child. The providers did not attempt to respond to my questions. UCSF failed to ease my concerns in the face of this glaring evidence that the treatments cause permanent harm when administered to minors. Instead of receiving an answer, UCSF squarely aimed to strip me of custody by apprising the family court that I questioned its protocols.

12. Similarly, I emailed UCSF's lead physician, providing him with research that I had found which suggests that puberty blockers can cause cognitive harm. After one year had passed, the physician finally acknowledged my email but still failed to provide me with any substantial feedback about my concerns for my son's safety.

13. UCSF concluded that C. gave informed consent. Yet, the form the clinicians provided C., my then 16-year-old son, did not indicate that permanent and irreversible sterility is a potential and likely outcome of the recommended treatment, particularly when puberty blockers

are combined with estrogen, as is the case with C. The form merely indicated that the treatments "might" impact his fertility.

14. However, the day after C. gave UCSF his "informed consent," they banked his sperm: collecting, freezing, and storing his sperm for future use. I contend that UCSF's actions were motivated by the possibility that these treatments would make C. infertile.

15. My experiences with UCSF point to an ideologically driven conveyor belt onto which vulnerable children like my son are placed and processed without the safeguards usually inherent in medical procedures.

16. Parental participation is tolerated only so long as it affirms the ideology. If, as in my case, the parent asks questions instead of immediately affirming the agenda, then that parent is disregarded even to the point, as in my case, of having their rights stripped away. Parent participation assists in closing the significant power differential between physicians and minors.

17. The availability of "gender-affirming" medical interventions for vulnerable children experiencing distress about changes in their bodies enables the ideological conveyor belt to proceed unhindered, leaving in its wake sterilized, drug-dependent and dysfunctional young adults, shattered relationships, and distrust in the medical profession.

18. Tennessee's efforts through its recent legislation to ban these treatments for minors is necessary to prevent the irreversible and incalculable harms caused by the unchecked gender medicine machine. The Act will save Tennessee families from similar devastation.

I declare under penalty of perjury that the foregoing is true and corrected.
Executed on May 19, 2023.

/s/ John Stiles
John Stiles (pseudonym)