# EXHIBIT 18

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| L.W. et al., *by and through her parents and next friends, Samantha Williams and Brian Williams*, | |
| Plaintiffs, | No. 3:23-cv-00376 <br> JUDGE RICHARDSON |
| v. | |
| JONATHAN SKRMETTI et al., | |
| Defendants. | |

**<u>DECLARATION OF YVONNE YOE</u>**

I, Yvonne Yoe,[1] declare as follows:

1. I am over the age of 18 years and am not a party to this action. I have actual knowledge of the following facts and, if called upon to testify to them, could and would do so competently. I am submitting this Declaration in support of Defendants' opposition to Plaintiffs' Motion for a Preliminary Injunction.

2. Tennessee recently passed a law prohibiting medical procedures performed on minors "for the purpose of: (A) Enabling a minor to identify with, or live as a purported identity inconsistent with the minor's sex, or (B) Treating purported discomfort or distress from a discordance between the minor's sex and asserted identity," Tenn. Code Ann. § 68-33-101, *et seq*. This Act will provide parents with necessary protections against manipulation and coercion on the part of health care providers, ex-spouses, and confused children to comply with demands for medical interventions aimed at "affirming" a child's professed discordant gender identity under threats of alienation or loss of a child to suicide.

3. I am a resident of the State of Tennessee. My daughter, Z, received treatment from a local eating disorder therapist who encouraged me to affirm her discordant gender identity. I fear that my daughter's medical providers will blatantly disregard my decisions for my child's medical and mental health. Tennessee's Act will prevent parents, like me, and children, like my daughter, from suffering harm. It will restore the rights of all parents, not just those who agree with demands for "gender-affirming" medical interventions, to make medical and mental health care decisions for their children following their natural, healthy development.

---

[1] Declarant is submitting this Declaration using a pseudonym to protect the privacy of her children and other family members.

4. Growing up, my daughter, Z, never hinted that she had issues with her gender identity. However, Z suffers from several comorbidities, including learning disabilities, anxiety, depression, self-harm, anorexia, and body dysmorphia. She also suffered from bullying and online sexual abuse.

5. In 2020, Z saw an eating disorder therapist. She was battling anorexia and was near the point of being hospitalized.

6. Around that time, Z announced that she was transgender. She was 12 years old. I was completely blindsided, so I spoke with her therapist privately. The therapist told me that Z suggested she had felt she was transgender for 3 years. The therapist hinted that I should affirm her.

7. My daughter has severe dyscalculia, a learning disability that causes her to struggle understanding space in time. Therefore, 3 years could mean 10 years or even 3 weeks.

8. My daughter had never hinted that she had gender dysphoria before this announcement.

9. The therapist was aware that Z had never questioned her gender before. I was shocked that the therapist blindly took her word for it knowing about her comorbidities.

10. I poured myself into research and was completely horrified that no randomized clinical trials on gender-affirming therapy and medical procedures existed. There is absolutely no data to support the safety of these medical treatments on minors. I quickly realized that because I questioned my daughter's trans identity, I was considered closed-minded and bigoted. I could be accused of psychological abuse for not 100% affirming Z's new identity.

11. I became paralyzed trying to find Z the help she needed. I was scared to speak to her Vanderbilt-affiliated pediatrician and afraid to have her sit one-on-one with a therapist. I felt so betrayed by the medical profession. I felt that, at every corner, a provider or clinician would encourage my daughter to transition, ultimately ending with unnecessary and harmful medical treatments without my consent.

12. I ended up cutting ties with the eating disorder therapist. I knew it was a gamble because Z was so new to her eating disorder recovery. Still, I did not want to risk more damage that may be caused by her beloved therapist affirming her while I was non-affirming due to my own research of the literature.

13. As a parent who understands the current research available, I am infuriated that I cannot obtain the help my child needs based on the same rigors necessary to establish a standard of care in every other area of medicine. Through developing relationships and connections with parents like me, I ultimately found a therapist in Dublin, Ireland, to work with her. Z saw the therapist via Zoom for about a year.

14. Today, Z is well and only needs to see her therapist on an as-needed basis. However, I fear her needing further care for her anorexia or any other health issue that may pop up due to the current gender-affirming political and clinical environment.

15. I also cannot get the mental health care I need to process this challenging situation emotionally. Every single parent I have met in Tennessee dealing with this feels the same way. We are struggling to find help.

16. Tennessee's Act protects its vulnerable children by making these medical interventions unavailable. The Act will also prevent the harm inflicted on parents who fight to

defend their mentally disturbed children from irresponsible healthcare providers. It is a necessary regulation that should be upheld for the protection of children and their families.

I declare under penalty of perjury that the foregoing is true and corrected.

Executed on May 19, 2023.

*/s/ Yvonne Yoe* _____
Yvonne Yoe (pseudonym)
