```
 1              IN THE UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF TENNESSEE
 2                     NASHVILLE DIVISION

 3   L.W., by and through her parents )
     and next friends, Samantha       )
 4   Williams and Brian Williams,     )
     et al.,                          )
 5                                     )
          Plaintiffs,                  )
 6                                     )
          v.                           ) 3:23-cv-00376
 7                                     ) JUDGE RICHARDSON
                                       )
 8   JONATHAN SKRMETTI, IN HIS         )
     official capacity as the         )
 9   Tennessee Attorney General       )
     and Reporter, et al.             )
10                                     )
          Defendants.                  )
11                                     )
                                       )
12   ------------------------------------------------------------

13

14

15     BEFORE THE HONORABLE ELI J. RICHARDSON, DISTRICT JUDGE

16

17                   TRANSCRIPT OF PROCEEDINGS
                    TELEPHONIC STATUS CONFERENCE

18
                         May 24, 2023
19

20

21

22   ------------------------------------------------------------

23   DEBORAH K. WATSON, RPR, CRR
     Official Court Reporter
24   713 Church Street, Suite 2300
     Nashville, TN 37203
25   debbie_watson@tnmd.uscourts.gov
```

```
 1   APPEARANCES:

 2


 3   For the Plaintiffs (via telephone):

 4              MR. JOSHUA A. BLOCK
              American Civil Liberties Union Foundation
 5              125 Broad Street, 18th Floor
              New York, NY 10004
 6              (212) 549-2593
              jblock@aclu.org

 7


 8
     For the Defendants (via telephone):
 9
              MR. ADAM KARL MORTARA
10              Lawfair LLC
              40 Burton Hills Blvd., Suite 200
11              Nashville, TN 37215
              (773) 750-7154
12              mortara@lawfairllc.com


13


14   For the Intervenor, United States of America (via
     telephone):
15
              MS. TAMICA DANIEL
16              Department of Justice
              Housing and Civil Enforcement Section
17              150 M Street NE
              Washington, DC 20002
18              (202) 598-9636
              tamica.daniel@usdoj.gov

19

20

21

22

23

24

25
```

```
 1                          *   *   *
 2           The above-styled cause came on to be heard at
 3      8:33 a.m. on May 24, 2023, before the Honorable Eli J.
 4      Richardson, District Judge, when the following proceedings
 5      were had, to-wit:
 6
 7           THE COURT:  All right.  We are on the record for
 8      a telephonic conference in the matter of L.W., et al., vs.
 9      Skrmetti, et al., with the United States as intervenor, and
10      the case number is 3:23-cv-376.
11           The Court appreciates counsel jumping on for a
12      call here that the Court set really less than 24 hours ago.
13           And as background, the Court's review of the
14      defendants' response to the Docket No. 21, Motion for
15      Preliminary Injunction filed by the plaintiffs, had raised
16      some issues in the Court's mind about the possibility, which
17      has sort of been ongoing, consideration for the Court
18      regarding a potential hearing on the motion at Docket No. 21
19      as well as the United States' corresponding motion for
20      preliminary injunction at Docket No. 40.
21           And with time really being at a premium in
22      various senses regarding scheduling, the Court wanted to
23      schedule something sooner rather than later.  Appreciate
24      counsel jumping on.
25           We're going to talk about the possibility of a
```

```
1    preliminary injunction hearing and various issues related to
2    that.
3             All right.  I'm going to ask counsel to make
4    their appearances, and then I will clarify my understanding
5    about who is going to be speaking for each side.  In that
6    regard, I should say that if any attorney who's not speaking
7    doesn't want to enter an appearance, that's fine as well,
8    but at least to have the appearances from counsel that will
9    be speaking.  We'll start with the plaintiffs.
10            MR. BLOCK:  Good morning, Your Honor.  This is
11   Josh Block from the ACLU on behalf of plaintiffs, and I'll
12   be the one speaking today.
13            THE COURT:  All right.  Good morning, Mr. Block.
14            MR. BLOCK:  Good morning.
15            THE COURT:  How about for the defendants?
16            MR. MORTARA:  Good morning, Your Honor.  Adam
17   Mortara, lead counsel for the defendants.  I'm joined this
18   morning by Clark Hildabrand, Ryan Henry, Trent Meriwether,
19   and Brooke Huppenthal of the Tennessee Attorney General's
20   Office.
21            THE COURT:  All right.  Thank you and good
22   morning, Mr. Mortara.
23            And for the United States?
24            MS. DANIEL:  Good morning, Your Honor.  This is
25   Tamica Daniel for the United States.  I'll be speaking
```

1  today.

2  **THE COURT:** All right. Thank you, counsel.

3  So here's where the Court's head is at the
4  moment. The effective date of the statute at issue,
5  Tennessee Code Annotated 68-33-101, et seq., as everyone
6  knows, is July the 1st. If there is to be a hearing, it
7  makes sense to have it sooner rather than later, but not too
8  soon. Soon enough for the Court to consider fully any
9  evidence presented in open court but not so soon that
10  counsel can't prepare adequately for the hearing.

11  Regarding whether there is to be a hearing, I
12  want to note a couple of things. Right at present, it
13  remains possible that there be no evidentiary hearing or no
14  oral argument. It remains possible that there really could
15  be both, or it's possible that there could be either but not
16  both. And I think the Court wants to see more briefing to
17  make those determinations.

18  So, for example, either the plaintiffs' reply
19  brief, which could have an effect on the Court's decisions
20  about a hearing, that reply brief in support of the motion
21  for preliminary injunction is due on June the 1st. And then
22  the Court needs to make a decision about a hearing before
23  getting the government's reply in support of its motion for
24  preliminary injunction, but the Court does need to consider
25  the defendant's response to the government's motion, which

1  is due May 31st.

2      So my thought is to get a hearing date on the

3  calendar with the notion that it's possible that it could be

4  called off, you know, within the next couple of days after

5  June 1st.  But we need to schedule something now.

6      The Court doesn't cancel scheduled hearings

7  lightly, but if it determines that the issues don't require

8  a hearing, it's not going to call upon counsel to expend

9  their resources in something the Court is confident would

10  not ultimately affect its decision on the instant motion.

11      So with that as background, I wanted to put out

12  the notion that from the Court's perspective -- and this is

13  related on a -- this is based on a couple, maybe three

14  different considerations that the Court has, but it's

15  looking at the dates roughly June 8th or 9th and wanted to

16  talk about that.

17      Mr. Block, I have two questions for you to start.

18  What do you think about the days June 8th or 9th or both,

19  and how long do you think it would take for the plaintiffs

20  to present their evidence in support of the motion for

21  preliminary injunction?  And before I ask you to respond,

22  you know, the Court is aware, obviously, that there is --

23  you know, there is sworn testimony in the forms of

24  declarations from both sides, not from the United States at

25  this juncture, but on -- the plaintiff has its declarations,

1    the defendant has its.  And the Court realizes it can rely

2    on that, but again, may want to have a hearing to resolve

3    factual disputes if the Court determines that there are

4    material ones after receiving the additional briefings I had

5    mentioned.

6              So if, Mr. Block, there was to be a hearing and

7    you were to present evidence in live Court, what do you

8    think about the June 8th, June 9th time frame, and how long

9    do you think the plaintiffs' evidence would take to present?

10             **MR. BLOCK:**  Thank you, Your Honor.  I -- so those

11   dates are unfortunately dates in which our plaintiffs,

12   specifically the Williams family who we would be most likely

13   to call to testify, are out of the country, and in which one

14   of our primary experts, Dr. Antommaria, is out of the

15   country.  So those would be hard dates for us if the Court

16   desires testimony from either of those witnesses.

17             Our position is we think that when the reply

18   comes in, that the Court will be able to resolve the motions

19   without having a hearing, but we are also, you know, more

20   than happy to, you know, present evidence on any topic the

21   Court thinks would be helpful if -- without other, you know,

22   specifications, you know, if the hearing were to take place,

23   we would have anticipated having, you know, either one of

24   the parent plaintiffs or one of the minor plaintiffs testify

25   and having one of our experts testify.

1    Some of this depends on what issues the
2  defendants actually think are in dispute.

3    Then the third issue is, I don't know if the
4  Court will find disputed questions of fact regarding what
5  Vanderbilt is doing to be dispositive, but if that is a
6  dispositive issue, there might be need to have a third party
7  subpoena to Dr. Brady at Vanderbilt because they, given all
8  of the legal -- given the legal situation, they're unwilling
9  to testify without a subpoena, which is why there's not a
10 declaration from her other than the 30(b)(6) declaration on
11 the record.

12    Again, I don't think that would be necessary, and
13 I certainly don't want to put on evidence the Court doesn't
14 desire to hear, but I guess it -- I'd say maybe that's one
15 day of evidence for our case.  If defendants intend on
16 putting five days' worth of evidence, then we would
17 obviously want to have more evidence ourselves.

18    **THE COURT:**  All right.  Thank you for that,
19 Mr. Block.  That is helpful.  And certainly understand what
20 you're saying, you know, I think on the issue of whether a
21 hearing is necessary.  You put your finger on it.  The Court
22 needs to make a determination as to what is really in
23 dispute and whether a hearing would help in that regard.  It
24 would be a matter of public record that it's rare for this
25 Court to find the need for a preliminary injunction hearing.

1   We're usually able to rule based on what's in the record,
2   but can't say for sure at this time.
3           Mr. Block, given what you have said, what would
4   your proposal be for, let's say, a two-day block for a
5   preliminary injunction hearing?
6           I'm thinking, Mr. Block, might you be on --
7           **MR. BLOCK:**  Oh, yes.  I apologize.  I was on
8   mute.
9           Depending on -- trying to be courteous and muting
10  whenever possible.
11          Ideally for us, the week of beginning -- I'm
12  sorry.  I'm looking at the wrong month on my calendar.  The
13  week of the 19th would be much better for us, and the week
14  of the 26th.  Of course, that cuts things very close for the
15  Court.
16          **THE COURT:**  All right.  Thank you for that.
17  That's helpful to know.  It presents some -- based on our
18  current criminal trial that's scheduled to go, which
19  obviously are things that we can have trouble scheduling
20  around.  The defendant's insisting on a speedy trial.  But
21  it could present some issues, but it's helpful to know your
22  view on that.
23          All right.  Continuing with the same side of the,
24  really, before we get to the defendants, I'm going to ask
25  Ms. Daniel her thoughts on the same matters that Mr. Block

1  had just discussed.

2          **MS. DANIEL:**  Good morning, Your Honor.  We -- the

3  8th or the 9th would work for us.  We're available that date

4  but understand that that doesn't work for the plaintiff.  We

5  would also be available during the earlier half of the week

6  of the 19th but not the end of that week.

7          **THE COURT:**  Okay.  You know, it occurs to us here

8  that based on, I think, when the weekend falls, that the

9  19th is, I think it's the recognized holiday for Juneteenth

10  this year, right?  So that would be starting -- you're

11  saying that week of Tuesday, so maybe Tuesday and Wednesday

12  but not like Thursday or Friday?

13          **MS. DANIEL:**  Correct, Your Honor.

14          **THE COURT:**  Yeah.  Okay.  All right.

15          Now, you know, when I look at the government's

16  briefing and kind of what it's saying and what it has filed

17  and what it has not filed, I'm suspecting that a preliminary

18  injunction hearing, the United States would not have its own

19  evidence to present.  Would that be fair to say, Ms. Daniel?

20          **MS. DANIEL:**  Your Honor, that's correct.  We

21  don't have our own witnesses to present.

22          **THE COURT:**  Okay.  All right.

23          Mr. Mortara, what are your thoughts?

24          **MR. MORTARA:**  Good morning, Your Honor.  Thank

25  you.

1          We did have an opportunity to meet and confer

2    with plaintiffs' counsel yesterday and discuss the

3    possibility of an evidentiary hearing during which Mr. Block

4    let me know that the weeks of June 5th and June 12th did not

5    work.  So when we went to consult our experts as to their

6    availability, we were focused on the last two weeks.  So I

7    can tell you right now I have not even asked the experts

8    about the 8th and the 9th.  But that raises a sort of

9    anterior or preliminary issue of what it is we would

10   actually be materially disputing, and Your Honor mentioned

11   the possibility of written testimony.

12          Mr. Block and I also discussed the possibility of

13   the expert portion of the case being fully written if the

14   gravamen of the material of disputed facts were on the, I

15   would say, the plaintiffs' side, the fact witness, the

16   irreparable harm side, and Mr. Block referred to the

17   situation with Vanderbilt where there are two Vanderbilt

18   declarations that are attached to our brief as part of

19   Exhibit 1.  I'm sure the Court has at least seen that they

20   exist, whether the Court's consulted them or not.

21          And, of course, Mr. Block mentioned the

22   possibility of third-party witnesses.  If it were a fact

23   witness exclusive affair, then, of course, I don't need to

24   consult our expert witnesses, and the June 8th and 9th dates

25   would work just fine for us.  I would suggest that if that's

1   really the only date that could work, that we work something

2   out with the Williamses in the form of possibly a

3   stipulation or some other way that we could accommodate the

4   Williamses' testimony perhaps remotely.

5           As to the week of Juneteenth, the dates of 20th

6   and the 21st and the 22nd, which is the Thursday, I think

7   the United States previously advised that the 23rd is a

8   complete no-go.  But 20, 21, and 22 work fine, and the week

9   of the 26th works.

10          We have, again, if the gravamen of the material

11  disputes goes to experts and the Court really wants experts

12  there, we have sporadic expert availability throughout that

13  time.  Some are available some days, some not.  And at this

14  point, I couldn't possibly guarantee -- in fact, I can tell

15  you guaranteed not, to be able to get all of defendants'

16  experts, any one or two of those days that have been

17  mentioned.

18          But again, if Mr. Block and I agree that expert

19  testimony would go in written form as we were talking about

20  yesterday, we have not come to any conclusion, because, of

21  course, defendants have not seen the reply brief which is

22  quite important for making any decision like this.  That

23  would make it much easier for us to do any of those dates --

24  20, 21, or 22 or anytime of the week of the 26th -- or the

25  8th or 9th, because all the witnesses would be plaintiffs.

        **THE COURT:** Okay. All right. Thank you for
that, Mr. Mortara.

        Mr. Block, what are your thoughts in response to
that?

        **MR. BLOCK:** Well, Your Honor, I guess -- you
know, I guess it depends a little bit on what defendants
want to get out of the testimony of the plaintiffs. I think
that our -- we do have the two families that are proceeding
anonymously. They are available during that time period.
It, of course, raises just more logistics about closing
courtrooms and things like that for them to testify.

        The Williamses are -- they're out of -- they've
had a long-standing vacation. I think they're in London on
that day. If there's no expert testimony, then the
conference with our expert isn't necessary to -- it isn't an
impediment.

        Obviously, if the Court -- we're happy to do
whatever the Court wants, and we will, you know, make
ourselves available to provide whatever evidence the Court
wants. We just might not be able to make certain witnesses
available. And I do think that Dr. Antommaria, to the
extent the Court wants to hear expert testimony, might be a
particularly important expert for the court to hear. He
testified in the Alabama case, and -- you know, and
obviously the Williams family is more comfortable testifying

1  publicly than the others.

2     **MR. MORTARA:**  Your Honor, this is Adam Mortara.

3  May I make a suggestion?

4     **THE COURT:**  Yes, sir.

5     **MR. MORTARA:**  What if we did a June 8 and 9 with

6  everybody but the Williamses and did a cleanup hearing, if

7  you will, one day the week of the 19th for the Williamses to

8  testify should it become necessary?  Again, this is all

9  prefaced by if the Court believes the gravamen of the

10 material disputes is on the fact side, and we can do the

11 experts in writing.  Because, of course, I haven't consulted

12 our experts about availability on the 8th and 9th.

13    **THE COURT:**  All right.  So the notion being, you

14 know, June 8th or 9th for witnesses other than the

15 Williamses and other than the expert who is not available,

16 right?

17    **MR. MORTARA:**  We would agree with plaintiffs that

18 the experts would all go in in writing should the Court

19 agree with that.

20    **THE COURT:**  Okay.  All right.  One moment.  Stand

21 by.

22    (Respite.)

23    **THE COURT:**  All right.  So in your view,

24 Mr. Mortara, when we think about June 8th or 9th, you know,

25 we wouldn't have the Williamses, we wouldn't have the

experts, then the question becomes, okay, well, then, who

would testify?  The other plaintiffs or plaintiffs' parents,

and also someone -- we'll say Dr. Brady, whomever -- at

Vanderbilt.  Is that the -- sort of the universe of

potential people for June 8th or June 9th under your

proposal?

        **MR. MORTARA:**  Your Honor, I will give you the

broadest possible universe with the caveat that the reply

brief could substantially cut it down.  I think I actually

sent Mr. Block an e-mail just an hour before this hearing

saying there's a sliver of a chance that what gets said in

the reply brief makes even the defendants believe a hearing

is unnecessary, although I think we're the most pro-hearing

of the group of court plaintiffs, United States defendants.

        But the broadest universe would be that we felt

there was some need to call the plaintiffs' parent, the

plaintiff parents.  And there is one, I believe,

non-plaintiff parent of Ryan Roe, that we wanted them to

testify.  We do not anticipate any need for the minors to

testify as far as we're concerned.

        Then there is Vanderbilt and the possibility of a

witness or witnesses from there.  We could serve trial

subpoenas as Mr. Block suggested, do that today or tomorrow

so that they would have some chance, two weeks, to know that

they have to be there.

1      On top of that, we have a variety of fact witness

2  declarations that were offered by persons who are sometimes

3  called detransitioners -- I'm sure Your Honor might be

4  familiar with the term -- and others that we might wish to

5  call during that June 8 or 9.  We are securing availability

6  of some of those individuals.  And I think Your Honor could

7  probably sense the materiality or not of that testimony and

8  give us a sense of whether that would be something the Court

9  wanted to hear, but we could make those people or some of

10 them available.

11      So that's the broadest universe.  I think the

12 likely core universe is some of the plaintiffs and the

13 non-Williamses, obviously, and Vanderbilt.

14      **THE COURT:**  Okay.  All right.  That is helpful,

15 Mr. Mortara.

16      You know, and the Court, not really in a position

17 to say for sure, it could see how testimony from Vanderbilt

18 wouldn't be necessary in terms of their not necessarily

19 being in dispute about what Vanderbilt is doing and why,

20 although I haven't decided.

21      But sort of the proposal there's still this

22 possibility of testimony from someone from Vanderbilt under

23 subpoena, sounds like; some detransitioners; plaintiff

24 parents; and a non-plaintiff parent of Ryan Roe; the notion

25 being, hey, maybe set aside the 8th or the 9th, maybe

1  both -- but we can talk about what the timing would be --
2  for those persons.
3          And then the expert witnesses would, you know,
4  testify by affidavits only as they have now.  I guess that
5  could be supplemented if someone felt the need in response
6  to the briefing.  And then the -- you know, the Williamses
7  could -- you know, they could either, if they want to do
8  sort of post-briefing declarations, they could do that.
9          But there still is the possibility of a later
10 hearing date if that isn't done in writing.
11         My thought is that probably, if the parties are
12 in agreement, to do -- to have expert testimony be by
13 declaration only whereby the parties aren't, after the fact,
14 gonna jump up and down and say, well, the Court should have
15 had live testimony to make credibility determinations.  If
16 the parties aren't going to do that, have that view, then I
17 think it makes sense for the Court to think that it's likely
18 to be able to make determinations based on the declarations.
19 And, of course, at the preliminary injunction stage, these
20 are preliminary only.
21         But I'm certainly amenable to the notion of
22 someone saying, you know, hey, listen, this is if everyone
23 has decided there are material factual disputes between the
24 experts that are relevant to particular motions at hand, for
25 someone to say, well, we have to have live testimony just,

1  you know, on material issues, and credibility determinations

2  have to be made based on live testimony.  I'm all ears.

3       But I'm also open to the notion that, you know,

4  if folks say right now, hey, Judge, to the extent those

5  decisions have to be made, you know, you should make them on

6  the -- you know, we think you should make them on the

7  written submissions.

8       So I'm going to ask Mr. Block:  What do you think

9  of Mr. Mortara's proposal for June 8th or 9th?

10      **MR. BLOCK:**  Your Honor, I think our preference,

11  especially if we're talking about just one or two days of

12  hearing, would still very much be to have it later.  One of

13  our -- the Doe family is traveling June 1st through 5th, and

14  so that doesn't give a lot of time for us to prepare them.

15  And I know just the stress that goes through putting, you

16  know, these families -- getting these families prepared for

17  hearings, that it -- we would have to do a lot of the prep

18  work for them, I think, significantly in advance of when the

19  Court makes a determination as to whether a hearing is

20  necessary.

21      So I think that it would be -- our preference

22  would still very much be for, if a one- or two-day hearing,

23  to be later in the month.

24      In terms of whether a hearing is necessary for

25  these witnesses, I -- of course, if defendants are putting

1    on detransitioners, we -- and the Court deems that to be

2    helpful and relevant testimony, then we certainly want to

3    put on our plaintiffs and their families.

4         If there's not going to be live testimony on the

5    detransitioners, I do have my doubts that the testimony of

6    the parent plaintiffs will be that relevant to the issues in

7    dispute to the extent that the issues in dispute are what

8    care are they receiving now that Vanderbilt is not providing

9    the care.  Or to the extent that part of the defendants want

10   to contest whether their care is medically necessary,

11   obviously, Dr. Brady would be the most appropriate witness

12   for that as opposed to the parents themselves who have seen

13   their children flourish but are not medical professionals

14   themselves.

15        So we will make ourselves available to the Court.

16   I do think that for our plaintiff families, it would be --

17   having it later in the month would be, you know, much less

18   stressful and would give the Court time to determine whether

19   it really wants to hear from them.

20        **MR. MORTARA:**  Your Honor, this is Adam Mortara.

21   May I have a third proposal?

22        **THE COURT:**  Yes, sir.

23        **MR. MORTARA:**  I'm sorry, Your Honor, to jump in.

24   I think we're having a little bit of a broader conference

25   than I had anticipated, but I -- it really does sound to me

1    from a number of things Mr. Block has said, both yesterday

2    in our very expansive meet and confer and today, that the

3    parents' testimony may not be necessary.  And if it isn't,

4    then we go right back to the 8th or the 9th being possible

5    for Vanderbilt or the detransitioners, which may or may not

6    be necessary themselves, and some parents that we have, the

7    declarants that you saw in our brief.

8            The question that I have, and I just put it to

9    the Court because I know the Court probably doesn't like

10   questions being put from one side to the other, is if

11   Mr. Block will tell us that the parents have arranged for

12   alternative treatment for the minor plaintiffs to begin

13   after Vanderbilt stops treating July 1st, and confirm that

14   in writing, I don't see any need to call the parents at all.

15           **THE COURT:**  What do you think about that,

16   Mr. Block?

17           **MR. BLOCK:**  Well, Your Honor, I do think if

18   defendants are putting in -- on testimony from other

19   third-party parents who, you know, are upset that their

20   child transitioned, then the testimony of our parents is

21   very relevant and we would want that to be put in.

22           In terms of the care, two of our plaintiff -- no

23   one has alternative treatment options in Tennessee.  The

24   defendants have talked about the Choices Clinic.  They only

25   serve people that are 16 or older.  Two of our families have

1  appointments scheduled in the future for clinics out of
2  state.  Those appointments have not taken place yet, but
3  they are backup plans that they have scheduled initial
4  appointments in the future for, and the third family has not
5  yet identified an out-of-state clinic to schedule an
6  appointment yet.
7          **MR. MORTARA:**  So, Your Honor, again -- I'm sorry,
8  Your Honor.
9          **THE COURT:**  Go ahead.
10         **MR. MORTARA:**  Your Honor, Adam Mortara again.  So
11 again, from our perspective, we will forebear calling any
12 fact witness that would require the parents to be there.
13 And Mr. Block didn't identify which families are which.  If
14 the Williamses are one of the families that have lined up
15 alternative treatment, we do not need to call them.  The
16 only parents that we would need to call are the ones, the
17 parents of the family that has not yet lined up alternative
18 treatment.
19         And the reason for this, Your Honor, should be, I
20 think, fairly plain, but I will make it express:  If
21 plaintiffs have lined up alternative care, this is not an
22 emergency from our perspective.  For reasons that we gave
23 you before and that the Court frankly did not agree with,
24 but now even more the additional reasons that they have
25 alternatives and that this is not a high-pressure emergency

1   situation if they have alternatives.

2          The one family that does not, what we would like

3   to ask them is why haven't you or what's the problem.  And I

4   guess that's all I'd have to say about that, Your Honor.

5   But I think we're getting very close to an agreement that

6   most of the testimony is not necessary.

7          **THE COURT:**  You know, I'm in general sort of

8   seeing it that way.  And I think there are a couple of

9   considerations here as I sort of take stock of where we now

10  are.  One is, scheduling this is going to be difficult, and

11  that's a function of obviously who is available and who

12  isn't.

13         It's also a function of the relatively short time

14  frame that we're looking at here, and there's nothing anyone

15  can do about any of that.

16         The other thing is that, you know, now it's

17  typical for parties in preliminary injunction context to

18  sort of insist -- and I'm not saying disingenuously but, you

19  know, insist that a hearing would be something they want and

20  it's a good idea.  But sometimes, upon further reflection,

21  the parties really aren't insisting on that and don't

22  necessarily think it's necessary.

23         I will say this, that from my perspective,

24  usually a factually and legally sound opinion on a motion

25  for preliminary injunction can be done without a hearing by

1  a U.S. district judge, but a district judge would do well to

2  err on the side of holding a hearing if one or more parties

3  are really insisting on it.  I'm not really hearing that,

4  understanding that that's sort of a general statement that

5  doesn't account for various, you know, particulars, but

6  that, you know, could play out based on what, you know, may

7  show up to be in factual dispute.

8          But I do think that we have a situation here

9  where at the moment, no one is seeking to beat down the

10  courthouse doors to have a hearing.

11          Now, here's what I'd like to do: ask Mr. Block to

12  give me any further thoughts, then Ms. Daniel, then we'll

13  take about a five-minute break where folks can stay on the

14  call and step away and then come back in roughly five

15  minutes, and we'll see where we are on sort of a -- what

16  kind of is a not insignificant and tricky sort of scheduling

17  issue.

18          Mr. Block, your most recent thoughts?

19          **MR. BLOCK:**  I think they're probably in accord

20  with what the Court just said.  I think the issue of whether

21  or not there is sufficient irreparable harm to warrant an

22  injunction I think is going to be a matter the Court

23  determines, you know, as a matter of law based on facts that

24  are essentially undisputed.  And so I don't think that that

25  would be helpful to have a hearing on.

1          I think that, you know, to the extent the only

2     thing I've heard today that makes me think that we would

3     want or insist on a hearing would be if the Court is

4     inclined to sort of waive a narrative of detransitioners or

5     the parents of detransitioners to test the need for our

6     plaintiffs to have care, then we certainly would want to put

7     on live testimony of our own witnesses.

8          Other than that, I think that this also depends

9     on the level of scrutiny the Court determines applies, or

10    that we think that a high scrutiny applies that whatever

11    disputes there are between either the fact witnesses or the

12    expert witnesses don't rise to the level of a material

13    dispute that prevents the Court from issuing the preliminary

14    injunction in our favor based on the prediction of

15    likelihood of success.

16         So we -- I guess I largely echo what the Court's

17    preliminary thoughts were.

18         **THE COURT:**  All right.  Thanks for that,

19    Mr. Block.  And understanding that, you know, you're making

20    sort of general statements about your view for a need for a

21    hearing.  And that, you know, if the Court's going to rely

22    on testimony of detransitioners, their stories, then you

23    might want witnesses.  And you do think it's possible that

24    factual differences, disagreements would be more material

25    under a rational-basis standard of review.  But with those

```
1   caveats, you're not seeing a blazing need for an evidentiary
2   hearing.
3           All right.  Thank you for that.
4           Ms. Daniel, my sense is that, you know, in terms
5   of a hearing, the government's view is, hey, if there's
6   going to be oral argument, we're all for that, but otherwise
7   we don't need a hearing, we don't need an evidentiary
8   hearing, because that's more the plaintiffs' bailiwick.
9           Is that fair to say?
10          MS. DANIEL:  Your Honor, I think that is fair to
11  say.  We -- given that we're not presenting our own
12  witnesses, we don't have any strong opinions on the
13  necessity of an evidentiary hearing.
14          THE COURT:  Okay.  All right.
15          MR. MORTARA:  Your Honor, Adam Mortara here.
16  Would you mind me getting one final point in?
17          THE COURT:  Yeah, yeah, yeah.  We'll hear from
18  you and then we'll take a few-minute break.
19          MR. MORTARA:  So, Your Honor, just not wishing to
20  dispute the spirit of what you said about nobody wanting a
21  hearing, the issues on which we would want a hearing -- and
22  I fully agree with Your Honor's comments about nobody
23  jumping up and down about the expert situation, so we can
24  agree with your characterization of that.  We will not jump
25  up and down.
```

1    The things on which we would want a hearing
2  include the issue of irreparable harm with respect to
3  alternative treatment that I just mentioned, but also should
4  there be a disagreement between the parties about whether
5  VUMC, who will return to offering these treatments if a
6  preliminary injunction issues, which we have highlighted
7  very profoundly in our brief that we believe that VUMC is
8  not going to start these treatments again if there's a
9  preliminary injunction because of Section 105, the private
10  right of action, which is unaffected by this proceeding, and
11  because of their decision to simply exit the business, and
12  their statement that they would only reenter it if the
13  enforcement entire of the act was enjoined, if that's a fact
14  issue about what their intent is, we would need a hearing on
15  that.  And those are kind of two irreducible minimums for
16  us.

17          **THE COURT:**  All right.  Okay.

18          **MR. MORTARA:**  Thank you, Your Honor.

19          **THE COURT:**  Yes, sir.  Appreciate it.

20          The -- you know, I'm calling them the state
21  defendants, but the defendants, is seeking -- does believe a
22  live hearing is necessary on the issue of alternative
23  treatments, and a particular -- it sounded like based on
24  what Mr. Block represented, there is, you know, one family
25  that has not lined up alternative care, and the state would

```
1   want -- the state defendants would want to inquire into that

2   because it goes to irreparable harm, and then also, in terms

3   of irreparable harm, evidence regarding VUMC's position on

4   what would happen even if there was a preliminary

5   injunction.

6              Have I summarized that correctly?

7        MR. MORTARA:  That is correct, Your Honor.

8        THE COURT:  All right.  Thank you.

9              Well, now that you've raised that, I feel

10  compelled to give Mr. Block one more chance and then we'll

11  take our break.  Then I think we'll have it sort of

12  crystalized for the Court to maybe put out a proposal.

13             Mr. Block?

14       MR. BLOCK:  Thank you, Your Honor.  You know, two

15  brief things.  On the irreparable harm issue, the fact that

16  our client made appointments to travel hundreds of miles out

17  of state to, you know, find care for their kids that they

18  previously were able to obtain in Nashville, I think, is

19  deficient irreparable harm for a P.I. and --

20       THE COURT:  Is there -- sorry to interrupt,

21  Mr. Block.  Is your view that even if it's a little murkier

22  from the state's perspective -- the defendant's perspective,

23  I keep saying state -- but as we all know, under 11th

24  Amendment and so forth, we're talking about defendants in

25  their official capacity.  So the -- you know, the defendants
```

1  see this as definitely murkier with one of the minors.  But

2  your view is, yeah, but there are these other plaintiffs,

3  and there's no -- you know, there's no issue with respect to

4  those plaintiffs, those other plaintiffs.  Is that what

5  you're saying?

6         **MR. BLOCK:**  Well, yeah.  Our view is that there's

7  no provider in Tennessee that will provide care for minors

8  under 16 during this time period.  Two of the families have

9  care outside Tennessee which is irreparable harm, and the

10  third family might not even have that.  But we think that

11  even if they were -- the defendants were able to show that

12  the third family could also line up care outside Tennessee

13  with the waiting lists going on, that that still would not

14  defeat irreparable harm.

15         So that's sort of a paraphrase what I think

16  Your Honor was saying.

17         **THE COURT:**  Okay.  All right.  I thought maybe

18  one of the things was that, you know, the defendants were

19  saying as well, and this one plaintiff, you know, if they

20  haven't seen the need to look outside Tennessee, maybe it's

21  not an issue where the lack of such care would be

22  irreparable harm for that particular minor.  I thought that

23  might be part of it as well, but . . .

24         **MR. BLOCK:**  Oh, no, I think that the families are

25  hoping very much that a preliminary injunction is entered

1    and so that they don't have to incur the harm and expense of

2    trying to take their kids out of state.

3                But I do think that that's immaterial ultimately

4    to the legal determination where care is being cut off as of

5    April 1st for everyone regardless.  That's undisputed, and I

6    think that that is sufficiently close in time also for PI

7    even under -- even if all the other facts are found against

8    us.

9                But in addition, Your Honor, on the issue of

10   Vanderbilt, you know, Vanderbilt has, you know, provided two

11   30(b)(6) declarations.  And in them, you know, they have

12   stated that they would provide care, they would resume

13   providing care in the event that the preliminary injunction

14   were entered.  So I think that, you know, ultimately, you

15   know, I think that after reviewing the evidence in the

16   record, you know, the Court, in applying the standard which

17   is that I don't think there has to be a 100 percent showing

18   that the PI will guarantee at Vanderbilt, provide care just

19   so that it is likely, I think that those -- the facts in the

20   paper record, coupled with the legal standard, will enable

21   the Court to make an order.

22               But we certainly -- if the Court thinks that

23   Dr. Brady and Vanderbilt are key witnesses, we would

24   certainly be okay having a hearing in which they're called

25   as a witness.  But I think -- I hope that the Court

1  ultimately does not think that's necessary.

2       **THE COURT:** All right. Final thing. And I know

3  we said -- I've said a couple of people could have the last

4  word, but Mr. Mortara, any response to Mr. Block's

5  assessment, your view is that, you know, actually what's in

6  the declaration may not tell the full story about

7  Vanderbilt's intentions; is that right?

8       **MR. MORTARA:** Well, you will see in Dr. Brady's

9  declaration, she refers to other threats of liability which

10  is, to us, pretty clearly a reference to Section 105 which,

11  as I've said, cannot be affected by this proceeding. So the

12  issue is, if a preliminary injunction will not open the

13  doors of Vanderbilt to these patients because Vanderbilt,

14  for other reasons unaffected by the injunction, will not

15  resume care, then the preliminary injunction causation

16  standard is not met.

17       So we would put Vanderbilt on the stand and force

18  them to answer whether they will do these things if there is

19  a preliminary injunction, and you will find that their

20  declarations do not say that.

21       **THE COURT:** Okay. All right. Understanding both

22  sides' views about VUMC on that.

23       All right. Counsel, stand by. We're going to

24  take about five minutes, and then we'll get everyone

25  reconvened, we'll take this back up, and decide where we

1    are.  Thank you.

2                    (Recess 9:19 a.m. to 9:24 a.m.)

3              **THE COURT:**  All right.  Do we have Mr. Block back

4    on the line?

5              **MR. BLOCK:**  Yes, Your Honor.

6              **THE COURT:**  Thank you.  Mr. Mortara, are you on

7    the line?

8              **MR. MORTARA:**  I am here, Your Honor.

9              **THE COURT:**  All right.  And Ms. Daniel?

10             **MS. DANIEL:**  I'm here, Your Honor.

11             **THE COURT:**  All right.  Now, the one fly in the

12   ointment for this particular plan is the stated

13   unavailability of the government.  I don't know who-all that

14   means.

15             I would say this.  My proposal is not going to

16   involve oral argument anyway, and therefore, it may -- my

17   hope would be that, you know, the government could have a

18   representative to observe, even if it's not lead counsel or

19   counsel that would do any oral argument.  So we'll see if

20   that is, in fact, the case.

21             My thought is, given trying to walk between the

22   raindrops, as the expression goes, of trying to sort of find

23   a time for potential testimony.  It would need to be, I

24   think, June 23rd, given our calendar here and some criminal

25   things going on and given the schedule of various folks that

1    was expressed to us.

2            I do think that our thought is to let the parties

3    know by June 5th whether we're going to have the evidentiary

4    hearing on June the 23rd.  And the testimony on June 23rd

5    would be, if at all, about one or both of the following:

6    testimony related to the extent to which there is

7    irreparable harm that would befall the plaintiffs in the

8    absence of a preliminary injunction, and that could include

9    issues about the lining up of alternative treatment.  So

10   that line of inquiry would be a possibility, and also

11   testimony about VUMC's intentions for continuing or not

12   continuing treatment under various circumstances, most

13   relevantly in the event that a preliminary injunction was

14   granted.

15           So I'm inclined to put that on the calendar for

16   June 23rd, let folks know by June the 5th whether we can

17   call that off.  And I don't know if I can do any better than

18   that without saying, you know what?  A hearing is really not

19   going to work very well.  We're just not going to do one.  I

20   think that's the best I can do, and I think we've probably

21   narrowed down what a potential hearing would need to be

22   about.

23           So, Ms. Daniel, understanding we're not going to

24   have oral argument so it won't be like, you know, Abraham

25   Lincoln and Daniel Webster having an opportunity to, you

1   know, display their rhetorical craft, it's going to be about

2   evidence anyway; if that's the case, can suitable counsel

3   for the government be available?  I'm sure they'd want to

4   observe.

5           **MS. DANIEL:**  Your Honor, we can have someone

6   available.

7           **THE COURT:**  All right.  Thank you.

8           Mr. Block, what do you think of that?

9           **MR. BLOCK:**  That certainly works, Your Honor.

10   And would it make sense to send the trial subpoena to

11   Vanderbilt now or to wait until after June 5th?

12           **THE COURT:**  To me, I think it would be prudent to

13   put them under subpoena with the option to call them off.  I

14   think that would probably be prudent.  And I say that

15   without intending to indicate any preliminary thoughts about

16   materiality of any factual dispute there.  Thank you.

17           Mr. Mortara?  What do you think?

18           **MR. MORTARA:**  Your Honor, thank you for your

19   accommodation.  That date works fine with the understanding

20   of the subject matter.  Thank you very much.

21           **THE COURT:**  All right.  Thank you.

22           So here's what we're going to do.  We're going to

23   put out an order putting this on the calendar and sort of

24   making express what I've stated, which is that there is a

25   hearing scheduled, but that it could be canceled based on

1   the Court's review of the defendants' response to the

2   government's motion for a preliminary injunction and the

3   plaintiffs' reply in support of their own motion for

4   preliminary injunction, that the Court will let the parties

5   know by June the 5th whether this hearing will be canceled

6   or whether it will proceed and, if so, which of the two

7   issues.  It will set the time in that order for 8:30 on June

8   23rd.

9           And I think that that should do it.  All right.

10  Any questions about the plan there?

11          **MR. MORTARA:**  None from the defendants, Your

12  Honor.

13          **MR. BLOCK:**  No, Your Honor.

14          **MS. DANIEL:**  Your Honor, just a quick question.

15  I just wanted to make note of the fact that our reply is

16  coming in presumably on June 7th and --

17          **THE COURT:**  Yes.

18          **MS. DANIEL:**  -- and flag that for the Court.

19          **THE COURT:**  Yeah, I had it seven days after

20  May 31st.  And it did occur to me, you know, that it's

21  certainly possible that the government's reply in support of

22  the motion for preliminary injunction should -- you know,

23  could have, obviously, an effect on various thoughts of the

24  Court.  Could have an effect on the decision whether to have

25  this evidence -- this evidentiary hearing on June 23rd.

```
1                I think on balance, though, I'll be able to make
2      that decision, and so I was inclined to go a little bit
3      earlier with making the decision unless, Ms. Daniel, you
4      would say, Judge, it may be really prudent if you wait until
5      June 8th after having a day to review our reply.
6                MS. DANIEL:  Your Honor, I think June the 5th
7      will be fine.  Just wanted to make sure that that was in
8      your consideration.
9                THE COURT:  Yeah, and that should be the last
10     brief that we have, that June 7th government reply in
11     support of its motion.
12               All right.  Anything else that counsel wish to
13     raise at this time?  I know you have a discussion coming up
14     with Judge Newbern.  Anything for the District Judge at this
15     time?
16               MR. BLOCK:  No, Your Honor.
17               MR. MORTARA:  Adam Mortara for defendants, Your
18     Honor.  No, and thank you for your time today.
19               THE COURT:  Yes, sir.
20               Anything from the government?
21               MS. DANIEL:  No, Your Honor.  That's it for
22     today.
23               THE COURT:  All right.  Thank you, counsel.  Look
24     for that order to be issued, and we'll go from there.
25               Thank you.  We stand in recess.
```

1           (WHEREUPON, the foregoing proceedings were

2    concluded at 9:32 a.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1   REPORTER'S CERTIFICATE

2

3              I, Deborah K. Watson, Official Court Reporter for

4   the United States District Court for the Middle District of

5   Tennessee, with offices at Nashville, do hereby certify:

6              That I reported on the Stenograph machine the

7   proceedings held via teleconference on May 24, 2023, in the

8   matter of L.W., by and through her parents and next friends,

9   Samantha Williams and Brian Williams, et al. vs. JONATHAN

10  SKRMETTI, in his official capacity as the Tennessee Attorney

11  General and Reporter, et al., Case No. 3:23-cv-00376; that

12  said proceedings in connection with the hearing were reduced

13  to typewritten form by me; and that the foregoing transcript

14  (pages 1 through 36) is a true and accurate record of said

15  proceedings.

16              This the 28th day of May, 2023.

17

18                          /s/ Deborah K. Watson
                            DEBORAH K. WATSON, RPR, CRR
19                          Official Court Reporter

20

21

22

23

24

25
```