# EXHIBIT C

# L.E.

## vs

## BILL LEE, et al.

## ARON JANSSEN, M.D.

## August 12, 2022



**Jerri L. Porter, RPR, CRR, CLR, LCR**

Chattanooga (423)266-2332   Jackson (731)425-1222
Knoxville (865)329-9919   Nashville (615)595-0073   Memphis (901)522-4477
www.elitereportingservices.com

```
 1

 2           IN THE UNITED STATES DISTRICT COURT
            FOR THE MIDDLE DISTRICT OF TENNESSEE
 3                    NASHVILLE DIVISION
    _____
 4


 5
    L.E., by his Next Friends and
 6  Parents, SHELLEY ESQUIVEL and
    MARIO ESQUIVEL,
 7
                 Plaintiff,
 8
    vs.                           Case No. 3:21-CV-00835
 9

10  BILL LEE, in his Official
    Capacity as Governor of
11  Tennessee, et al.,

12               Defendants.
    _____
13

14

15
                 Videoconference Deposition of:
16
                 ARON JANSSEN, M.D.,
17
                 Taken on behalf of the Plaintiff
18               August 12, 2022

19               Commencing at 9:30 a.m. CST

20

21
    _____
22
             Elite-Brentwood Reporting Services
23              www.elitereportingservices.com
               Jerri L. Porter, RPR, CRR, LCR
24                   P.O. Box 292382
                 Nashville, Tennessee 37229
25                    (615)595-0073
```

Case 3:23-cv-00376 Document 105-3 Filed 06/01/23 Page 3 of 9 PageID #: 2341
Elite-Brentwood Reporting Services        (615)595-0073
www.elitereportingservices.com

1               MS. BORELLI:  Objection to form.
2               THE WITNESS:  I mean, I'm one of the
3    authors of them.  I specifically wrote the section
4    on social transition based upon the updated evidence
5    and support.  So I would say, yes, I would plan to
6    follow the recommendations.
7               But again, it's important to note that
8    explicit within the standards of care is that these
9    are guidelines and that what's most important is the
10   patient and the family you have sitting in front of
11   you in your room.  It's always going to be a
12   tailored and individualized discussion about the
13   risks, benefits, and alternatives of every single
14   intervention that we have before us before any
15   decisions are made.
16   BY MR. HILDABRAND:
17   Q    What chapters in the new Standards of Care
18   have you assisted in drafting?
19   A    The child's -- the section in the mental
20   health section.
21   Q    All right.  Were drafts of the new chapters
22   circulated back in December of 2021?
23              MS. BORELLI:  Object to form.
24              THE WITNESS:  I don't know the dates.
25   They weren't publicly made available.  They were

Case 3:23-cv-00376 Document 105-3 Filed 06/01/23 Page 5 of 9 PageID #: 2341
Elite Brentwood Reporting Services  *  (615) 595-0073
www.elitereportingservices.com
218

```
 1  specific and for which feedback was solicited from
 2  WPATH members.
 3              MR. HILDABRAND:  All right.  Travis, can
 4  you circulate Document HH?
 5  BY MR. HILDABRAND:
 6  Q     Dr. Janssen, is this the December 2021 draft
 7  of the "Child" -- the "Child" section for Standard
 8  of Care 8 that was circulated back in December 2021?
 9  A     I couldn't tell you the providence of this
10  document.
11  Q     Have you seen drafts of the Standard of
12  Care 8 "Child" chapter?
13  A     It's been a highly iterative process, writing
14  this chapter, and there have been probably
15  40 different versions that have been circulated
16  among the authors over the course of the last year
17  and a half.  So, I have no sense of this document
18  that I see in front of me of which of those drafts
19  this may or may not represent.
20        I also see there's a watermark that says
21  "WPATH Property, Confidential Draft."  I'm not sure
22  how that enters into the record or what that means.
23              MR. HILDABRAND:  This is not a document
24  that we obtained during discovery.
25  / /
```

Case 3:23-cv-00376 Document 495-3 Filed 06/01/25 Page 5 of 9 PageID #: 23419
Elite Brentwood Reporting Services * (615) 595-0073
www.elitereportingservices.com

```
 1    BY MR. HILDABRAND:
 2    Q      Going down, do you see where it says, "Gender
 3    Diverse:  This chapter employs the term 'gender
 4    diverse,' given that gender trajectories in
 5    prepubescent children cannot be predicted and may
 6    evolve over time"?
 7                 MS. BORELLI:  Just a standing objection
 8    on the record based on concerns that Dr. Janssen has
 9    flagged about the providence of this document.
10                 THE WITNESS:  I don't feel comfortable
11    discussing a confidential document that hasn't been
12    released that's not in its final form.
13    BY MR. HILDABRAND:
14    Q      All right.  We'll just talk about the terms
15    and ideas here, even if it's not specifically for
16    this document.
17           Here, the document says, "The term 'gender
18    diverse' includes transgender binary and nonbinary
19    children, as well as gender diverse children who
20    will ultimately not be transgender."
21           Regardless of whether or not this is what the
22    Standard of Care 8 will say, would you agree with
23    that definition of gender diverse?
24                 MS. BORELLI:  Object to form.
25                 THE WITNESS:  I would agree with that.
```

Case 3:23-cv-00376-TRM-JEM Document 105-3 Filed 06/01/23 Page 6 of 9 PageID #: 2344
Elite-Brentwood Reporting Services    *  (615) 595-0073
www.elitereportingservices.com

```
 1   education?
 2              MS. BORELLI:  Object to form.
 3              THE WITNESS:  No.
 4   BY MR. HILDABRAND:
 5   Q      If WPATH were to publish a chapter on eunuchs
 6   and state that eunuch is a gender identity, would
 7   you agree or disagree with that statement?
 8              MS. BORELLI:  Object to form.
 9              THE WITNESS:  I have not seen a draft of
10   an alleged chapter on eunuchs, so I have no context
11   in which I would be able to answer that question.
12   BY MR. HILDABRAND:
13   Q      Are you aware that WPATH -- I'm sorry.
14          Is WPATH planning on publishing a chapter on
15   eunuchs in the Standards of Care 8?
16              MS. BORELLI:  Object to form.
17              THE WITNESS:  I won't be able to tell
18   you that until after it's published.
19   BY MR. HILDABRAND:
20   Q      Have there been drafts of a chapter on
21   eunuchs circulated at any point in the past
22   two years?
23              MS. BORELLI:  Object to form.
24              THE WITNESS:  I don't know.
25   / /
```

Elite-Brentwood Reporting Services * (615) 595-0073
www.elitereportingservices.com

```
 1                  (Overlapping speech.)
 2                  MR. HILDABRAND:  This is a speaking
 3      objection.  This is our deposition.  Your side has
 4      used many tweets and retweets of articles during the
 5      course of depositions of our witnesses.
 6                  And this is something that he posted
 7      less than two months ago about an ideal that he says
 8      is important to him.  So I would like him to answer
 9      the question, is F-that an important ideal to him.
10                  MS. BORELLI:  And I will register a
11      continuing objection that this has absolutely
12      nothing to do with any of the opinions offered in
13      his expert report and he is testifying in this case
14      as an expert.  My objection stands.
15      BY MR. HILDABRAND:
16      Q     Please answer the question.  Is that an
17      important ideal for you?
18      A     An important ideal --
19                  (Overlapping speech.)
20                  MS. BORELLI:  Same objections.
21                  THE WITNESS:  -- is how I'm choosing to
22      raise my daughters, which is different from my
23      professional ethics and the work that I do with the
24      patients that I work with.
25                  In the context of this particular tweet,
```

Case 3:23-cv-00376 Document 195-3 Filed 06/01/23 Page 85 of 99 PageID #: 2369
Elite Reporting Services · (615) 595-0073
www.elitereportingservices.com

```
 1    it is a value for me, as it is a value for all of
 2    the patients that I work with, that understanding
 3    one's own wishes, desires, choices to be made with
 4    an informed decision, that we want to understand
 5    specific to this case, specific to the expert
 6    testimony that I am providing, that when a decision
 7    about medical care and psychiatric care is made,
 8    that that decision is made with an understanding of
 9    the risks, benefits, and alternatives of that
10    specific choice that is agreed upon and discussed
11    with the patient, with their family, and with the
12    healthcare team.  That is an ideal that I stand for.
13    BY MR. HILDABRAND:
14    Q     Do you -- one last question.  Do you view
15    this tweet as an example of advocacy?
16              MS. BORELLI:  Same objections.
17              THE WITNESS:  This tweet is a personal
18    tweet.  It has nothing to do with advocacy in the
19    child psychiatric space.
20    BY MR. HILDABRAND:
21    Q     Have you answered -- have you understood the
22    questions today and answered to the best of your
23    ability?
24    A     I have.
25              MR. HILDABRAND:  That's all I have.
```

Case 3:23-cv-00376-TAD-KDM Document 495-3 Filed 06/01/23 Page 10 of 59 PageID #: 23240
Elite Brentwood Reporting Services • (615) 595-0073
www.elitereportingservices.com