# Exhibit D

1              IN THE UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF ARKANSAS
2                      CENTRAL DIVISION

3    DYLAN BRANDT, et al.,

4                    Plaintiffs,
       v.                          No. 4:21CV00450 JM
5
                                   November 28, 2022
6                                  Little Rock, Arkansas
                                   8:57 AM
7    LESLIE RUTLEDGE, et al.,

8                    Defendants.

9         **TRANSCRIPT OF BENCH TRIAL - VOLUME 5**
         BEFORE THE HONORABLE JAMES M. MOODY, JR.,
10            UNITED STATES DISTRICT JUDGE
                    _____
11
     APPEARANCES:
12
     On Behalf of the Plaintiffs:
13
         MR. CHASE STRANGIO, Attorney at Law
14       MS. LESLIE COOPER, Attorney at Law
         MR. JAMES D. ESSEKS, Attorney at Law
15         American Civil Liberties Union
           125 Broad Street, Suite 1800
16         New York, New York  10004-2400

17       MS. BREEAN WALAS, Attorney at Law
           Walas Law Firm, PLLC
18         Post Office Box 4591
           Bozeman, Montana  59772
19

20       MR. AVIV S. HALPERN, Attorney at Law
         MS. LAURA KABLER OSWELL, Attorney at Law
21         Sullivan & Cromwell, LLP
           1870 Embarcadero Road
22         Palo Alto, California  94303

23

24   Appearances continuing...

25

                Karen Dellinger, RDR, CRR, CCR
                United States Court Reporter

1

2    APPEARANCES CONTINUED:

3    On Behalf of the Plaintiffs:

4        MR. ARUN BODAPATI, Attorney at Law
         MS. LAUREN M. GOLDSMITH, Attorney at Law
5            Sullivan & Cromwell, LLP
             125 Broad Street, Suite 2424
6            New York, NY 10004-2498

7        MR. DANIEL J. RICHARDSON, Attorney at Law
             Sullivan & Cromwell LLP
8            1700 New York Avenue
             Washington, DC 20006

9
         MR. GARY L. SULLIVAN, Attorney at Law
10           ACLU of Arkansas
             Legal Division
11           904 West 2nd Street, Suite One
             Little Rock, AR 72201

12
         MS. SHARON ELIZABETH ECHOLS, Attorney at Law
13           Gill Ragon Owen P.A.
             425 West Capitol Avenue
14           Suite 3800
             Little Rock, AR 72201-2413

15

16   On Behalf of the Defendants:

17       MR. DYLAN JACOBS, Attorney at Law
         MR. MICHAEL CANTRELL, Attorney at Law
18       MS. AMANDA LAND, Attorney at Law
         MS. HANNAH TEMPLIN, Attorney at Law
19           Arkansas Attorney General's Office
             323 Center Street, Suite 200
20           Little Rock, Arkansas  72201

21

22

23       *Proceedings reported by machine stenography.  Transcript
     prepared utilizing computer-aided transcription.*

24

25

INDEX - VOLUME 5 (11/28/22)

| WITNESSES FOR THE DEFENDANTS: | Direct | Cross | Redirect | Recross |
|---|---|---|---|---|
| STEPHEN LEVINE | 781 | 885 | 955 | 959 |

Karen Dellinger, RDR, CRR, CCR
United States Court Reporter
Case 3:23-cv-00376_Document 45 ARED Filed 06/01/23 Page 54 of 644 PageID #: 2500

1            (Proceedings continuing in open court at 8:57 AM.)

2                 THE COURT:  Are y'all ready?

3                 MR. JACOBS:  Your Honor, Defendants are ready to

4    call, I guess, our next witness, not our first witness.  One

5    thing I wanted to check in on.  So Dr. Regnerus is prepared to

6    testify remotely tomorrow, and I wanted to ask at what time the

7    Court could begin tomorrow with the hope that it could begin I

8    guess as early as we can make it happen.  Because Dr. Regnerus

9    is testifying late in the evening from where he's located, so

10   just to avoid him having to run into testifying in the wee

11   hours of the early morning, if we could start as early as we

12   can.  I recognize that --

13                THE COURT:  I expect this will likely make everybody

14   cringe, but courthouse opens at 7:30.

15                MR. JACOBS:  Could we -- I think he'd be available

16   to start at like 8:00.

17                THE COURT:  That's fine.  That would give everybody

18   time to get in the building and get settled and we could make

19   sure stuff is up.

20                MR. JACOBS:  Okay.  That's all the preliminary

21   matters that we have.

22                THE COURT:  So with an asterisk, you've got my

23   entire week.  What are your thoughts on how long you're going

24   to take?

25                MR. JACOBS:  Our witnesses will be done Thursday and

1    we'll rest on Thursday.

2                    THE COURT:  I've got two sentencings, one at 1:00

3    and one at 2:00 on Wednesday.  Those usually last 30 minutes,

4    so we're probably going to work a little later into lunch on

5    Wednesday.

6                    MR. JACOBS:  That won't be a problem, Your Honor.

7                    THE COURT:  And then it looks like I've got a lunch

8    hearing on the 1st.  Okay.  That's what is on my schedule other

9    than you guys.  So are we ready to jump back in?

10                    MR. JACOBS:  We're ready, Your Honor.  Defendants

11   will call Dr. Stephen Levine.

12                    THE COURT:  Sir, if you could come on the far side

13   of that silver rail.  Good morning.

14                **STEPHEN LEVINE**, **DEFENDANTS' WITNESS**, **DULY SWORN**

15                              DIRECT EXAMINATION

16   BY MR. CANTRELL:

17   Q     Good morning, Dr. Levine.

18   A     Good morning.

19   Q     Can you state your name and spell it for the record.

20   A     Stephen, S-t-e-p-h-e-n, Barrett, B-a-r-r-e-t-t, Levine,

21   L-e-v-i-n-e.

22   Q     Thank you.  Dr. Levine, can you tell us what academic and

23   clinical positions that you currently hold?

24   A     I am clinical professor of psychiatry at Case Western

25   Reserve University.  I'm a staff psychiatrist in a group

1   Q.   And switching back to adults, you've written letters

2   of authorization for adults seeking gender-affirming

3   surgeries.  Is that correct?

4   A.   I have.

5   Q.   And you've done that as recently as the past two

6   years.

7   A.   I have.

8   Q.   And you've also written letters authorizing hormone

9   therapy for adult patients with gender dysphoria.

10  A.   I have.

11  Q.   And these are letters they can take to the

12  endocrinologist.  Is that right?

13  A.   Yes.

14  Q.   And you have written such letters approving hormone

15  therapy for minors under 18 in a few cases within the past

16  five years, haven't you?

17  A.   I don't think in the past five years.

18  Q.   Okay.  Can we turn to Dr. Levine's deposition, page

19  78?

20       I would like you to read along with me starting on

21  line 3.  So between you and Mrs. Novak, there have been a

22  handful of cases in the past, say, five years where you

23  have approved hormone therapy for minor.  Is that right?

24       These are particularly fraught difficult

25  circumstances, yes.

1   A.    Yes.

2   Q.    Mrs. Novak is someone who works in your medical

3   practice -- or your psychiatry practice?

4   A.    She's a younger colleague of mine.

5   Q.    That was your testimony.

6   A.    I'm sorry?

7   Q.    That was your testimony that I read correctly.

8   A.    Yes.  I'm just not sure today whether it's five years

9   or six years now.  And in generally, there have been a few

10  very fraught cases where we felt that this is a very

11  reasonable thing given the severity, the complexity of the

12  case, and that we would -- we, along with parents, would

13  hold our breath that this would be of help.

14  Q.    And you have cosigned letters for hormone therapy for

15  minors written by Mrs. Novak, again, approving some minors

16  for hormone therapy.  Is that right?

17  A.    Yes, but this has not occurred very recently, Ms.

18  Cooper.

19  Q.    You would not write a letter supporting hormone

20  therapy for a minor if you did not believe the patient had

21  gender dysphoria, correct?

22  A.    Correct.

23  Q.    And you would not write a letter approving a minor

24  for hormone therapy without first determining that they

25  had a longstanding, stable gender identity.  Is that

1    much more cautious.  We will give adolescents hormones,

2    but not as quickly as the Standards of Care would like.

3        That was your testimony in Keohane.

4    A.    I have to say yes.

5    Q.    And just to clarify, the Standards of Care you're

6    referring to in the 7th Edition, is that the WPATH's

7    Standards of Care 7th Edition?

8    A.    Yes.

9    Q.    When you were deposed in May of this year in this

10   case, the Brandt case, you testified, did you not, that

11   going forward you have not made a decision to no longer

12   write letters approving hormone therapy for patients under

13   18 years of age.

14   A.    Indulge me a minute.  In the previous thing you put

15   up, my deposition of adolescents was not the definition I

16   gave to the Judge earlier this morning.  It was my

17   definition of an adolescent is somebody 19 years of age.

18   And so if you reread that, it would include 18-year-olds

19   and 19-year-olds.

20       So would you repeat the last question you asked me?

21   Q.    Sure.  When you were deposed this past May in this

22   case in Arkansas, you testified that, going forward, you

23   have not made a decision to categorically not write

24   letters approving hormone therapy for patients under 18,

25   correct?

1   A.   I don't remember saying that, but if you have that, I

2   trust you.

3   Q.    Yeah.   I think we want to put that in the record.

4        Can we look at deposition page 227?

5        And if you go to line 3, part way through beginning

6   with the words, "Have you made a decision."   Are you with

7   me?  It's highlight.

8        Have you made a decision to no longer consider

9   hormone therapy for anybody who has not reached their 18th

10  birthday since you provided those letters?

11        Answer:   I've made a decision to be very cautious and

12  to put a period of time in therapy between me and the

13  letter.

14        You go on to say more, which you're welcome to read

15  if you would like, but I want to continue on to another

16  passage that picks up rather than taking the Court's time

17  reading a lot of discussion in between.

18        If we could turn to page 228, line 3.   Let me know if

19  you want to review there.

20             MR. CANTRELL:   Your Honor, I would like to just,

21  if we could, take a look at the intervening testimony,

22  glance at that.

23             MS. COOPER:   Sure.   We can post that.

24  Absolutely.

25             THE COURT:   I thought you were in the

1 deposition, Mr. Cantrell, but go ahead.

2 BY MS. COOPER:

3 Q.    Do you have that in front of you now, Doctor?  If you

4 look at line 3 and read along with me.

5        So I'm not sure if that answers my question.  Have

6 you made a decision to no longer provide letters?

7        Answer:  Oh, I'm sorry.  No, I haven't made that

8 decision.

9        Question:  So would it be a case-by-case basis if

10 there were a patient that you felt it was appropriate for

11 you -- appropriate for, you would consider doing it, say,

12 a 17-year-old or a 16-year-old?

13        Mr. Cantrell:  Object to form.

14        Answer:  I don't have a -- yes.  The answer to your

15 question is yes.

16        I'm not going to ask you if that was your testimony

17 again --

18 A.    Thank you.

19 Q.    -- since I see how you love those questions.

20        Now, today you testified that you would not recommend

21 hormone therapy for patients under 18.  Do you mean you

22 would not generally recommend hormone therapy as a general

23 matter?

24 A.    Yes.

25 Q.    So there may be exceptional cases where you would

Case 3:23-cv-00376  Document 145-4  Filed 06/01/23  Page 11 of 14 PageID #: 2507

1  still consider it appropriate.

2  A.   Yes.   These are very fraught circumstances.   I think

3  all of us all over the world recognize that we are under

4  very difficult circumstances sometimes.   We don't know

5  what to do and we eventually go along with the patient's

6  sincere desire to try hormones.

7  Q.   Now, you talked on direct about an article you wrote

8  called, *Reconsidering Informed Consent for*

9  *Trans-identified Children, Adolescents, and Young Adults.*

10      And I just want to ask you a couple of questions

11  about that article.

12      In this article, you recommend informed content

13  process that you think providers should undertake before

14  authorizing medical or surgical transition for minors,

15  correct?

16  A.   Yes.

17  Q.   I'd like to pull up a passage from that article to

18  show you.   If we can look at page 2.   And I have some

19  material highlighted.   Actually, I would like you to skip

20  to -- sorry.   I wasn't in front of the mic.   I would like

21  to skip to the second highlighted paragraph.

22  A.   I know what you're you talking about.

23  Q.   We over highlighted.   If you'll read along with me in

24  the second paragraph there.

25      Social transition, hormonal interventions, and

1          MS. TEMPLIN:  Apologies.

2          MR. JACOBS:  That's what we would suggest.  Dr.

3  Lappert is willing to change around his travel to make that

4  work.  I think we went a little bit longer with Dr. Levine than

5  we anticipated.  We hoped to be able to do both today.  So long

6  as the Court has tomorrow afternoon available, so long as

7  there's not any objections on that end, I think we could switch

8  those and get everything done.

9          THE COURT:  The only thing I have in my week that's in

10  y'all's way is the one o'clock 30 minute and the two o'clock 30

11  minute on Wednesday, then the noon hour on Thursday.

12          MR. JACOBS:  Neither of those will be problems on our

13  end, Your Honor.  If that's acceptable to everybody, I think we

14  will proceed with Dr. Regnerus tomorrow when we get everything

15  set and then proceed with Dr. Lappert.

16          THE COURT:  If we get both of them done tomorrow, how

17  late do you anticipate going on Thursday?

18          MR. JACOBS:  On Thursday, Your Honor, it could be a

19  full day on Thursday.  I just don't know whether it's going to

20  be sort of an early day out on Thursday or not at this point.

21          THE COURT:  I'm just curious.

22          MR. JACOBS:  Regardless of this, we'll still be

23  totally done on Thursday with our witnesses.  That won't impact

24  this at all.

25          THE COURT:  All right.  Court is in recess until

1   eight o'clock tomorrow.

2           MR. JACOBS:  Yes, Your Honor.

3       (Overnight recess at 4:19 p.m.)

4                   REPORTER'S CERTIFICATE

5       I certify that the foregoing is a correct transcript from
    the record of proceedings in the above-entitled matter.

6

7   /s/Elaine Hinson, RMR, CRR, CCR    Date:  December 4, 2022.
    United States Court Reporter

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25